[Civ. No. 34939. Second Dist., Div. One. May 7, 1970.]

FEDERATED MORTGAGE INVESTORS, Plaintiff and Appellant, v. GEORGE HUNT, Defendant and Respondent.

372

**COUNSEL**

Alef & Schnitzer and Martin J. Schnitzer for Plaintiff and Appellant.

C. Ramsey Randolph for Defendant and Respondent.

**OPINION**

**LILLIE, J.**—Plaintiff's complaint, as amended, sought recovery of monies expended for taxes on an apartment building in Westwood. Four causes of action were alleged. The first and third causes of action both pleaded a written agreement (dated September 6, 1966) whereunder defendant guaranteed partial repayment by a certain date of the total tax monies advanced ($135,000) to the extent of $67,910.12; in the first cause of action plaintiff sought recovery in its capacity as the successor in interest of a California corporation (Kirkeby-Natus, Inc.), while in the third cause of action plaintiff alleged it was then doing business under the fictitious name of Kirkeby-Natus, Inc. The second and fourth causes of action were on a common count for the above sum ($67,910.12) advanced at defendant's special instance and request; the second cause of action alleged that the sum in suit was advanced by plaintiff's predecessor in interest (Kirkeby-Natus, Inc.), while the fourth cause of action alleged the same matters except that plaintiff was then doing business under the fictitious name of Kirkeby-Natus, Inc. Following a court trial, it was adjudged that plaintiff take nothing by its amended complaint. The appeal is from such adverse judgment.

In reaching its decision the trial court upheld the denials in defendant's answer that plaintiff was the successor in interest to Kirkeby-Natus, Inc., and that it was doing business under the fictitious name alleged. Also upheld was the defense, affirmatively pleaded, that defendant's obligation to reimburse Kirkeby for the payment of taxes was conditioned on the payment of such taxes by Kirkeby, quoting from the agreement sued on,[1] "as pro-

---

[1]The agreement sued on reads as follows:

"THIS AGREEMENT, entered into this 6 day of September, 1966, by and between GEORGE HUNT (hereinafter referred to as HUNT), and KIRKEBY-NATUS (hereinafter referred to as KIRKEBY);

"WHEREAS, HUNT desires to cause KIRKEBY to pay the taxes which are due and payable on WESTWOOD TOWERS, LTD. in the sum of approximately $135,000.00, and

"WHEREAS, HUNT has received good and valuable consideration for this guarantee, receipt of which is hereby acknowledged,

GH Now therefore Hunt

DCK he/does hereby guarantee to KIRKEBY that in the event the taxes are paid by

vided in the agreement between Kirkeby, Lytton, and Weiler of concurrent date." Since the above conditions of this latter agreement (referred to as Exhibit 2) were not fulfilled, neither Kirkeby nor anyone else was required to advance and otherwise pay the taxes under the provisions of the agreement in suit (referred to as Exhibit 1).

The court made findings of fact, appropriate conclusions of law being drawn therefrom, setting forth its view of the above matters upon which its judgment, subsequently entered, was based. The sole ground of appeal is the sufficiency of certain key findings to support the judgment challenged, thus requiring a recital of the relevant facts adduced below which, on this appeal, must necessarily be viewed in the light most favorable to defendant as the prevailing party.

In April of 1964 the apartment building in question was owned by a limited partnership whose general partner was one Weiler. At that time the property was encumbered by first and second deeds of trust, the latter being security for a $200,000 loan made to Weiler by Kirkeby-Natus, Inc., while the former secured a first mortgage in favor of Lytton Savings and Loan Association. Without the knowledge of either Kirkeby or Lytton, in December of 1964 both loans went into default for nonpayment of taxes. Subsequently, in April of 1965, the principal of the Kirkeby loan became due and went unpaid, the borrowers remaining in default from that date forward. In order to save the project, Weiler began exploring the possibility of developing the building as a condominium, retaining one Strickstein, an attorney specializing in that area of the real estate field. In August a preliminary subdivision report, approving the condominium plan, was received from the Division of Real Estate; and in October a commitment was obtained from Mutual Savings and Loan, Pasadena, committing that concern to provide permanent financing on the sale of

---

KIRKEBY as provided in the agreement between KIRKEBY, LYTTON and WEILER of concurrent date, he does guarantee the repayment to
GH by Dec 15, 1966 for taxes
DCK KIRKEBY/of said moneys expended/to the extent of $67,910.12 provided:
1. Mutual Savings and Loan fails to fund under their commitment letter dated September 29, 1965; and
2. No other lending institution funds by December 1, 1966 in an amount equal to or exceeding $1,350,000; and
3. KIRKEBY does not foreclose and reinstate the LYTTON Loan No. 1-X-27835 by 12-15-66.

"IN WITNESS WHEREOF, the parties hereto have set their hands, this 6 day of September, 1966.

/s/ George Hunt
GEORGE HUNT
KIRKEBY-NATUS, INC.
By /s/ Don Klinkhammer "

individual condominium units. In order to sell such units, however, it was necessary to secure a final subdivision report from the Division of Real Estate. Such report, it appears, could not be issued without a tract map legally recorded with the approval of local governmental authorities, and these authorities refused to give their approval until the delinquent taxes were paid.

In December of 1965, both Lytton and Kirkeby having previously commenced foreclosure proceedings, Lytton was prepared to advertise its foreclosure sale. In the course of discussions that followed among Lytton, Kirkeby and Weiler, Kirkeby expressed its willingness to advance the delinquent taxes depending, according to its Mr. Klinkhammer's testimony, on certain conditions. These discussions continued through the early months of 1966 and culminated with an agreement among the above three parties on May 2, 1966. Such agreement was made feasible by the prior action of Mr. Strickstein in obtaining a conditional final subdivision report from the Division of Real Estate; while such report did not authorize the completion of sales or the closing of escrows, it did permit Weiler to enter into refundable deposit receipt agreements with potential buyers and to open escrows on the condominium units.

Under the terms of the May 2 agreement, both Lytton and Kirkeby agreed to postpone their foreclosure sales. In addition Kirkeby-Natus, Inc. further agreed to pay the deliquent taxes ". . . PROVIDED the following conditions are fulfilled:

"(a) All necessary governing bodies including but not limited to the City of Los Angeles, the County of Los Angeles, the State of California, approve the condominium plan subject to payment of real estate taxes as aforesaid; and

"(b) The 46 sales contracts necessary for the condominium plan have been fully executed and the credit of the 46 buyers under the said 46 sales contracts is approved, if required, by Mutual Savings and Loan Association of Pasadena."

The above agreement further provided that the terms thereof would become null and void at the close of business on June 14, 1966. On September 6, 1966, however, the same three parties executed another agreement apparently containing the same provisions and calling for the same engagements; it is this agreement "of concurrent date" (Exh. 2) which is referred to in the instrument (Exh. 1) made the basis of the first and third causes of action.

In the summer of 1966, plaintiff's Mr. Klinkhammer was introduced to the defendant by Weiler who had known defendant for some time as a

result of previous business transactions. A licensed real estate broker, defendant for 12 years had been an investor and developer in real estate; it further appears that he was planning to purchase one of the condominium units. Shortly after the above meeting, it having then become apparent that the taxes would have to be paid before the condominium plan could be completed, Klinkhammer told Weiler that Kirkeby would pay the taxes if Weiler could find a guarantor; a few days later Weiler told Klinkhammer that defendant had agreed to guarantee half the taxes.

The conversations between defendant and plaintiff's representatives leading up to the signing of the agreement (Exh. 1) were testified to by Mr. Klinkhammer, plaintiff's Mr. Jones and defendant. There were two meetings, and the versions thereof by the participants varied, quite understandably. We make mention only of defendant's version in view of the sole ground of appeal here urged, namely, the insufficiency of the evidence to support the findings; this course is dictated by the settled rule that "All of the evidence most favorable to the respondent must be accepted as true, and that unfavorable discarded as not having sufficient verity to be accepted by the trier of fact. If the evidence so viewed is sufficient as a matter of law, the judgment must be affirmed." (*Estate of Teel,* 25 Cal.2d 520, 527 [154 P.2d 384].) Defendant testified that prior to such meetings Weiler had shown him a draft of an agreement with Lytton (Exh. 2) and that he recalled seeing the provisions therein with respect to governing bodies and sales contracts, which provisions were important to him because he was interested as a buyer of one of the units. While he did not discuss specific conditions with plaintiff's representatives, he did tell plaintiff's Jones that Weiler had shown him another document with conditions on it and that his guarantee was to be conditioned on the other document. Defendant also testified that when he met with Mr. Klinkhammer in the latter's office to sign the guarantee (Exh. 1), he again repeated that his guarantee was subject to the conditions contained in Exhibit 2. Although such feeling was not communicated to Klinkhammer, "I felt that if those situations were met, my exposure certainly was not too great."

There is no dispute that upon the execution of the above agreement (Exh. 1), plaintiff promptly paid the taxes due, and all necessary approvals were obtained from appropriate agencies of government by September 4, 1966; thus, the first of the two conditions provided for in Exhibit 2 was fulfilled. However, the second of such conditions, the execution of 44 sales contracts and approval by Mutual Savings and Loan of the credit of 46 buyers, was apparently never met. A senior vice-president at Mutual testified concerning procedures and paper work as they related to credit approvals, stating that as of September 6, 1966, there were not 46 or more buyers with credit qualifications satisfactory to him, which condition re-

mained unchanged as of October 3, one month later. There was testimony that on the date last mentioned (October 3, 1966) Title Insurance and Trust Company, which had previously been sent 49 to 50 grant deeds and trust deeds to be recorded upon instructions from Mutual, received a letter from Mutual containing several conditions to be met prior to recording. A title officer for that title company testified that some of the conditions in this letter were met and some were not, one of the conditions in the latter category being the notification by Mutual that it had the necessary funds in escrow to permit closing. As a result the transaction failed to record, and the Mutual commitment expired.

On the other hand, as a consequence of the above matters all three of the conditions specifically set forth in Exhibit 1, upon the concurrence of which defendant would be liable on his guarantee, had been met: Mutual did not fund its commitment; no other lending institution funded the sum in question ($135,000); and Kirkeby did not foreclose and did not reinstate Lytton prior to December 1, 1966. When defendant failed and refused to pay the sums advanced to the extent guaranteed, this action was commenced.

Exclusive of the court's determinations with regard to its right to pursue the instant action in either of the capacities alleged, plaintiff challenges the sufficiency of the evidence to support some eight findings which serve to explain the denial of the recovery sought. In asserting these claims, plaintiff properly concedes that the findings of the trial court must be sustained if there is any substantial evidence, contradicted or not, which support such determinations. This, of course, is the principle reiterated in *Estate of Teel,* 25 Cal.2d 520 [154 P.2d 384], reference to which case was made in our recital of the background facts. Plaintiff nonetheless contends that the present case comes within the ambit of *Estate of Teed,* 112 Cal.App.2d 638, 644 [247 P.2d 54], which declares that substantial evidence must be of ponderable legal significance and cannot be deemed synonymous with any evidence. We are unable to accept plaintiff's assertion that the evidence here is lacking in such ponderability or that it is vulnerable to the rule, mentioned in other of plaintiff's authorities, that there must be more than a conflict of words to constitute a conflict in evidence.

We first make some preliminary observations. ■ " '[W]hile a surety cannot be held beyond the express terms of his contract, the contract is to be interpreted by the same rules used in construing other types of contracts, with a view towards effectuating the purposes for which the contract was designed [Citations.]' [Citations.] ■ 'Extrinsic evidence is "admissible to interpret the instrument, but not to give it a meaning to which it is not reasonably susceptible" [citations], and it is the instrument itself that must be given effect. [Citations.]' [Citations.]" *United States Leasing Corp.* v.

*DuPont,* 69 Cal.2d 275, 284 [70 Cal.Rptr. 393, 444 P.2d 65].) The above decision also notes that it is solely a judicial function to interpret a written instrument unless the interpretation thereof turns upon the credibility of extrinsic evidence. (P. 284.) In this case, extrinsic evidence (including that of the defendant) went in without objection. If there had not been a conflict in such evidence, as here there was, as an appellate court we would not be bound (as further pointed out in the *United States Leasing* case) by the construction of the instrument reached below.

It is contended that the court erred in finding that the conditions the plaintiff's obligation set forth in Exhibit 2 were also conditions to the defendant's obligation under Exhibit 1. The findings in such regard are as follows:

"IV

"The Court finds that at the time he executed said Exhibit A, it was the understanding and intention of George Hunt that Kirkeby-Natus, Inc., was not bound to pay or cause the payment of the taxes referred to therein unless the conditions precedent referred to in Plaintiff's Exhibit 2 had been met and that George Hunt did not, by the execution of Exhibit A, intend to, or understand Plaintiff's Exhibit 2 to mean that he would, be liable to Kirkeby-Natus, Inc., or any other person or entity which might pay said taxes if said taxes were paid notwithstanding the fact that both of said conditions precedent to Kirkeby-Natus, Inc.,'s [*sic*] obligation to pay said taxes had not occurred.

"V.

"The Court finds that the understanding of George Hunt with reference to Exhibit A attached to the amended complaint was reasonable and the Court construes said Exhibit A to have said meaning and legal effect."

According to plaintiff, Finding IV relates solely to defendant's subjective understanding and intent; intent, it is argued, standing alone cannot be the basis for any conclusion of law drawn by the court relative thereto. Such argument does not comport with California law on the subject. In *Pacific Gas & Elec. Co.* v. *G. W. Thomas Drayage etc. Co.,* 69 Cal.2d 33 [69 Cal.Rptr. 561, 442 P.2d 641], it was pointed out that "Some courts have expressed the opinion that contractual obligations are created by the mere use of certain words, whether or not there was any intention to incur such obligations. Under this view, contractual obligations flow, not from the intention of the parties but from the fact that they used certain magic words. Evidence of the parties' intention therefore becomes irrelevant.

"In this state, however, the intention of the parties as expressed in the contract is the source of contractual rights and duties. A court must

ascertain and give effect to this intention by determining what the parties meant by the words they used. ▇ Accordingly, the exclusion of relevant, extrinsic, evidence to explain the meaning of a written instrument could be justified only if it were feasible to determine the meaning the parties gave to the words from the instrument alone." (P. 38.)

▇ In the present case the defendant testified that he believed the parties understood that his liability did not arise until the conditions referred to in Exhibit 2 were fulfilled, his guarantee being that he would repay to Kirkeby the sum it expended for taxes in the event such taxes were paid by Kirkeby "as provided in the agreement between Kirkeby, Lytton and Weiler of concurrent date . . ." Furthermore, it is statutory law that "If the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisor understood it." (Civ. Code, § 1649.) Additionally, if there was any uncertainty to the language used, it must be emphasized that the instrument (Exh. 1) was prepared by Kirkeby, and any resultant ambiguity or uncertainty must necessarily be interpreted against the draftsman who caused such uncertainty to arise. Under the circumstances it cannot be said that the criticism of Finding IV is warranted.

As for Finding V, plaintiff contends that under the court's interpretation of the two agreements (Exhs. 1, 2), defendant's obligation was not only dependent on the payment of taxes by Kirkeby but was also conditioned on the payment of taxes *after* the governing bodies had approved the condominium plan. According to plaintiff, this was an impossible task since the testimony of Strickstein showed that approval of these bodies could not be secured until the taxes were paid. This condition, of course, is condition (a) of Exhibit 2. But the court did not find that such condition was not met. What the court did find was that Kirkeby had no duty to pay the taxes in suit until both conditions (a) and (b) had been met. Condition (b) not having been met, both conditions were not fulfilled, and Kirkeby paid the taxes at its own risk.

Finally, the argument is also made that when an agreement contains specific conditions, it is unreasonable to reach into some other agreement to find additional conditions. Pertinent to such claim is the following: " 'Where two or more written instruments are executed contemporaneously, with reference to each other, for the purpose of attaining a preconceived object, they must all be construed together, and effect given if possible to the purpose intended to be accomplished.' [Citation.] This principle controls whether each of the several instruments was signed by all or only some of the parties to the transaction. [Citation.]—Thus, the transaction may be tripartite or even more complex, a factor that must not be disregarded in

the process of interpretation of any of the documents." (*Collins* v. *Home Sav. & Loan Assn.*, 205 Cal.App.2d 86, 98 [22 Cal.Rptr. 817].)

The following portion of Finding VIII is next challenged for lack of factual support: ". . . but it is not true that said payment [of taxes] was made in reliance on the agreement of defendant George Hunt, and if payment was in fact made in reliance on said agreement, such reliance was not reasonable." The "agreement" referred to above is Exhibit 2. We agree with defendant's analysis of the above assignment of error: Even assuming that plaintiff did in fact subjectively rely on the agreement, no attempt has been made to show that such reliance was reasonable. Plaintiff does not challenge that portion of the finding which states that such reliance was not reasonable, nor does it make any showing that in such regard the finding was erroneous. Under the circumstances it becomes immaterial whether or not plaintiff did in fact actually rely on Exhibit 2 when it paid the taxes.

Finding XII declares that "It is not true that by the terms of Exhibit A annexed to the amended complaint defendant George Hunt guaranteed repayment to the plaintiff by December 15, 1966, of the sum of $67,910.12, but it is true that by the terms of said Exhibit A defendant did not guarantee repayment of any sum to plaintiff." Plaintiff points out that such finding should not have been made because the conditions or "terms" of the agreement therein referred to constituted the subject of the instant litigation. Considered with other findings of fact, however, any error in such finding cannot be considered of a reversible character; indeed, no claim is made to that effect by plaintiff.

By its Findings XVII, XVIII and XX the court determined that there were not 46 executed sales contracts and that the contracts and credit of 46 buyers were not approved by Mutual; it is urged (as with other findings) that there is no substantial evidence supporting such determinations. A careful examination of the evidence adduced in this regard convinces us that plaintiff's claim cannot be upheld. It will be sufficient to note, as did the trial court in its minute order, that in a declaration supporting an earlier motion for summary judgment, dated August 23, 1967, Mr. Klinkhammer stated, among other things, that "On September 6, 1966 when the defendant Hunt executed the agreement on which this action is based, and when the plaintiff paid the taxes, this condition had still not been met. In fact, it was never met and Mutual Savings and Loan Association has never approved all of the sales contracts and has, therefore, not made the loan referred to in its commitment letter."

Finally, it is contended that the court erred in its Finding XXI that the risk assumed by defendant in executing Exhibit A (sometimes referred to above as Exhibit 1) was limited to the risk that Mutual would in effect

breach its commitment later. This claim is not sustainable in view of defendants' testimony at the trial. Defendant stated that he recognized if conditions (a) and (b) of Exhibit 2 were met and Mutual failed to fund, he would be liable on the guarantee; he further testified that he understood he would have no liability if the two conditions were not met.

In light of the foregoing conclusions, it becomes unnecessary for us to decide whether the court erred in its findings that plaintiff was authorized to proceed herein in neither of the capacities alleged. In neither instance was recovery warranted under the determinations reached below which are substantially supported and free from reversible error.

The judgment is affirmed.

Wood, P. J., and Gustafson, J., concurred.