[Civ. No. 24878. Fourth Dist., Div. One. May 19, 1982.]

*RCA CORPORATION, Plaintiff and Appellant, v.
PAUL T. HUNT et al., Defendants and Respondents.

*Reporter's Note: This case was previously entitled "RCA Corp. v. Dodd-Conn Ltd., Inc."

904

COUNSEL

Berman & Clark and Jeffrey A. Clark for Plaintiff and Appellant.

Michael G. Nutter, Fullerton & Lemann and Scott D. St. Marie for Defendants and Respondents.

OPINION

**REED, J.***—RCA Corporation, plaintiff, appeals a summary judgment denying its action against Paul T. Hunt, Maureen H. Hunt and Robert Charlesworth, defendants, to enforce guaranties.

The facts as presented by RCA:

In 1977, Dodd-Conn became a distributor of RCA Autosound equipment. Dodd-Conn, a new company, sought a line of credit to buy RCA products on a deferred payment plan. The viability and extent of a credit line was repeatedly discussed by Charlesworth, a shareholder and Chief Executive Officer of Dodd-Conn, and M. L. Meehan, the manager of Credit and Collection for RCA. Meehan informed Charlesworth that any large line of credit be secured by some form of guaranty, preferably a personal guaranty of the principals of the corporation.

*Assigned by the Chairperson of the Judicial Council.

As Dodd-Conn ordered more RCA products, its payments became increasingly erratic. Meehan insisted the principals of Dodd-Conn execute personal guaranties before RCA would continue to ship products. Meehan emphasized the guaranties would cover the full amount of the Dodd-Conn debt to RCA and would be unlimited in amount. In June 1978, Charlesworth agreed to execute a personal guaranty. Meehan told Charlesworth he left the amount of the guaranty blank because the guaranty was to be unlimited. Charlesworth signed the guaranty and mailed it to RCA. After the guaranty, Dodd-Conn's demands for merchandise increased. RCA sought further personal guaranties. RCA then learned Paul Hunt had become a principal in Dodd-Conn. Hunt and his wife also agreed to execute a guaranty with the same terms as Charlesworth's in exchange for increased shipments from RCA.

In November 1978, Charlesworth called Meehan and asked RCA to release $750,000 worth of autosound equipment ordered by Dodd-Conn. Meehan had concerns the net worth of all the individual guaranties was not sufficient to warrant such a large shipment. Charlesworth insisted he and the Hunts had enough assets to cover the shipment if Dodd-Conn defaulted on its payments.

In August 1979, RCA met with Charlesworth and the Hunts. RCA was concerned about the increasing financial problems of Dodd-Conn. An RCA representative reaffirmed the personal guaranties would be enforced against the individual defendants in the event of a corporate default. In October 1979, Charlesworth tried to revoke his personal guaranty.

RCA sued Dodd-Conn for default on a promissory note and for goods sold and delivered. RCA simultaneously sued Charlesworth and the Hunts upon their guaranties. We are concerned here only with the action against the guarantors. RCA seeks to hold Charlesworth and the Hunts liable for over $300,000 of corporate debt, contending the Hunts and Charlesworth executed unlimited personal guaranties. **(1a)** -The individual defendants argue the guaranty instruments were invalid and unenforceable because of the blanks left as to the amount guaranteed.[1] The trial court granted summary judgment as to the individual defendants.

---

[1]Both the Hunt and Charlesworth guaranties read the same: "I [We] wish to assist Dodd-Conn [Purchaser] ... in perfecting arrangements whereby RCA Corporation ... may from time to time sell and deliver merchandise to and render services for

All we are called upon to determine is whether the instrument as a matter of law is unenforceable. ■ To make that determination, we interpret surety contracts by the same rules used in construing other types of contracts, with a view towards effectuating the purposes for which the contract was designed (*Federated Mortgage Investors* v. *Hunt* (1970) 7 Cal.App.3d 371, 377 [86 Cal.Rptr. 687]). Extrinsic evidence is admissible to interpret the instrument, to give it meaning to which it is reasonably susceptible (*id.* at p. 377).

■ We conclude that under the facts here a tenable interpretation of the writing is to create guaranties unlimited as to amount, so that, at least, an issue of fact is presented as to the intent of the parties.

The Hunts argue that not strictly enforcing the blank in the agreement against the makers of the agreement and finding it void and unenforceable as a matter of law will result in "rampant overreaching and deception" on the part of corporations seeking to victimize unsuspecting guarantors.

We note the individual defendants in this action may be more than duped guarantors. ■ The public policy of strictly construing surety contracts so as to protect the surety has long been held inapplicable where the guarantors gained a business or personal advantage from their guaranties. Indeed, the law declares that under such circumstances the statute of frauds normally applicable to surety agreements cannot be asserted and oral guaranties are enforceable (Civ. Code, § 2794, subd. (4); *Farr & Stone Ins. Brokers, Inc.* v. *Lopez* (1976) 61 Cal.App.3d 618 [132 Cal.Rptr. 641] [applying statute to principal of company]).

Judgment reversed.

Cologne, Acting P. J., and Wiener, J., concurred.

---

Purchaser on open, note or acceptance accounts. ¶ To this end I [we] hereby … guarantee such accounts of the Purchaser with your company in an amount not to exceed _____ Dollars ($ _____ ), to cover purchases heretofore or hereafter made by the purchaser from your company."