Filed 2/27/14  City of Novato v. Morgan CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| CITY OF NOVATO,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>DANIEL H. MORGAN et al.,<br><br>        Defendants and Respondents. | A130899<br><br>(Marin County<br>Super. Ct. No. 060409) |

This appeal concerns the scope of a personal guaranty to perform obligations under agreements to develop a residential subdivision.  The transaction at issue involved three Subdivision Improvement Agreements (SIA's), which we refer to as SIA 1, SIA 2, and SIA 3.  In prior litigation involving SIA 1 and SIA 2, plaintiff and appellant City of Novato (city) was successful in actions against the subdivision developers and received awards of attorney fees.  Now, in light of the developers' apparent inability to satisfy the attorney fee awards, the city seeks to enforce a personal guaranty and require the guarantors to pay the entire amount of fees previously assessed.

It is undisputed that the individual defendants, respondents Daniel H. Morgan and Mark Cunningham (collectively, defendants), personally guaranteed the performance of obligations owed under SIA 2.  The dispute is over whether the personal guaranty extends to SIA 1.  The trial court concluded that defendants' guaranty extended only to obligations owed under SIA 2, and it further concluded that the city had not satisfied its burden to show that defendants breached the guaranty as to SIA 2, in effect relieving

1

defendants of any obligation to pay attorney fees awarded to the city in the prior litigation. The court also awarded attorney fees to defendants in this litigation.

We agree with the trial court that the scope of the guaranty does not extend to SIA 1, and that defendants are not liable for attorney fees attributable to enforcing SIA 1. However, we conclude that defendants are liable under the guaranty for that portion of the attorney fee awards attributable to enforcing SIA 2. Because the trial court did not reach this issue in resolving the city's cause of action for declaratory relief, we shall reverse and remand to the trial court for a determination as to the amount of the fees awarded in prior litigation that defendants are obligated to pay as a consequence of their guaranty. We also reverse the attorney fees awarded in this litigation in light of our disposition.

## FACTUAL AND PROCEDURAL BACKGROUND

### *The Agreements to Develop the Subdivision*

The subdivision at issue in this case is known as Marin Country Club Estates – Unit 3 (subdivision) and includes 54 acres of land. In 1997, defendant Morgan approached the city about developing the subdivision. Morgan, a developer, was also president of Centennial Homes Inc. (Centennial), which acted as a general contractor for subdivisions built by Morgan and his related businesses. Morgan represented to the city that he would fix drainage problems on the subdivision property, develop seven lots on nine acres, and convey the 45-acre balance of the property to the Marin County Open Space District (Open Space District) to be preserved as open space.

Centennial, Morgan, and defendant Mark Cunningham created MCCE Development, LLC (MCCE Development) and MCCE Investors, LLC (MCCE Investors) to take title to the subdivision property and undertake development. Except where necessary to distinguish between the two MCCE entities, we shall refer to them collectively as MCCE.

The city attorney, Jeffrey Walter, sent Morgan a single proposed Subdivision Improvement Agreement, or SIA, covering the entire project. However, Morgan proposed that the project be broken into three separate agreements for tax purposes. The

2

city accommodated Morgan's request and memorialized the transaction in three documents that we refer to as SIA 1, SIA 2, and SIA 3.

SIA 1 obligated MCCE Development to construct all improvements needed to support the development of lots 1 to 7 of the subdivision. In addition, MCCE Development was required to repair and restore a nearby creek that runs through the subdivision.

SIA 2 gave MCCE Investors the option to complete improvements necessary to develop lots 8 through 37. In the alternative, MCCE Investors could elect to donate the lots to an organization dedicated to the preservation of open space. From the beginning, it was always the intent of MCCE Investors to donate lots 8 through 37 in order to preserve the land as open space and receive a tax benefit.

SIA 3 concerned the dedication of land for a park but only came into effect if lots 8 through 37 were developed. SIA 3 is not at issue in this litigation.

The SIA's were the subject of negotiations between Walter, on behalf of the city, and Judy Davidoff, an attorney representing Morgan and MCCE. Each of the SIA's contains what the city describes as a cross-default and cross-remedy provision (hereafter referred to as a "cross-default provision") providing that a breach of one SIA constitutes a breach of the others, with all of the remedies under one SIA available for a breach of any of the other SIA's. Walter insisted upon including the cross-default provision in each SIA in order to ensure that breaking the SIA into three agreements would not prevent the city from enforcing each SIA or accessing the security posted for each of the SIA's. Walter was particularly concerned that, without some provision tying the SIA's together, MCCE might develop the homes under SIA 1 but allow its obligations concerning the preservation of open space under SIA 2 to languish. Walter explained the cross-default provision to Davidoff, who agreed to include the provision in each of the SIA's.

The cross-default provision in SIA 2, which is similar to the cross-default provisions in the other SIA's, provides: "[MCCE's] breach of or default under SIA #1 and/or SIA #3 shall be deemed a breach of or default under this Agreement, and the City

3

shall have all the remedies available under this Agreement for such defaults and/or breaches of SIA #1 and/or SIA #3."

Each of the SIA's contains an attorney fees and cost provision that provides as follows: "In the event either party hereto commences any legal action or proceeding against the other party arising out of or in connection with this Agreement, the party prevailing in said action or proceeding shall be entitled to recover, in addition to its costs of suit, reasonable attorneys' fees to be fixed by the court, and such recovery shall include costs of suit and attorneys' fees on appeal, if any."

A paragraph in the recitals of each SIA refers to obligations owed under the other SIA's. The pertinent recital in SIA 2 reads: "WHEREAS, the parties hereto are also executing those certain subdivision improvement agreement[s] of even date herewith (the 'SIA #1' and 'SIA #3'), which SIA #1 and SIA #3 provide an alternative or supplemental performance by Subdivider for completion of the necessary improvements for the Subdivision . . . ." The parties agreed to include a contractual provision in each of the SIA's that provides as follows: "The recitals are part of this Agreement and are hereby incorporated by this reference." In its briefing on appeal, the city refers to this provision as the "incorporation paragraph." At trial, Walter articulated his view that, by expressly incorporating the recitals into each SIA through the incorporation paragraph, MCCE was acknowledging that it was agreeing to perform the obligations under the other SIA's.

### Negotiations Resulting in the Guaranty Agreement

When the SIA's were originally being negotiated, Walter included in the draft agreements a guaranty provision requiring the principals and members of MCCE to execute a personal guaranty ensuring performance of the SIA's. Walter sought a personal guaranty because the city was concerned about the risks of relying on "one asset" limited liability companies if the city encountered problems in trying to enforce the SIA's.

Davidoff rejected the idea of a personal guaranty on behalf of defendants. According to Walter, he was not concerned that defendants refused to provide a personal guaranty because it is customary for surety bonds to be used as security for performance of SIA's. Accordingly, the city was willing to accept surety bonds as security in lieu of a

4

personal guaranty. Thus, when the parties executed the final SIA's, the agreements did not contain a requirement of a personal guaranty.

Shortly after the city approved the SIA's, MCCE learned it could not obtain bonds for SIA 2 and SIA 3. Davidoff explained to Walter that MCCE could not obtain bonds to secure performance of SIA 2 and SIA 3 because the nature of the obligations under those agreements was uncertain. However, MCCE was able to obtain a surety bond for SIA 1.[1] The inability to obtain bonds for SIA 2 and SIA 3 was problematic because the city required security for each SIA as part of its regular practice and to comply with the Subdivision Map Act.

Davidoff contacted Walter to address the need for security. She affirmed that a bond would be obtained for SIA 1 and offered deeds of trust against lots 8 through 37 to secure performance of SIA 2 and SIA 3. On behalf of the city, Walter required Morgan and Cunningham to execute a personal guaranty in addition to offering deeds of trust. Walter explained at trial that "as a result of . . . not being able to find bonds for [SIA] 2 and 3, the parties moved forward in trying to find some security device that would take care [of SIA] 2 and [SIA] 3 . . . ." In other words, the parties saw no need to find alternative security for SIA 1, as to which MCCE was able to secure a surety bond.

One of the early drafts of a guaranty agreement offered by Walter was a "blanket guarant[y]" covering all three of the SIA's. When presented with the draft, Morgan refused to guarantee SIA 1 and directed his attorney, Davidoff to convey his refusal to Walter. In subsequent drafts of the guaranty, it was expressly limited to SIA 2 and SIA 3.

---

[1]As defendants acknowledge, the surety bond does not expressly identify SIA 1, although it plainly applies to SIA 1 because the amount of the bond corresponds to the cost of the improvements required under SIA 1. The city concedes on appeal that "the amount of the bond is consistent with the amount related to improvements for SIA 1," and it states in its brief that MCCE could only obtain a bond for SIA 1 but not SIA 2 or SIA 3. Walter likewise testified at trial that MCCE was not able to find bonds for SIA 2 and SIA 3.

5

At trial, Walter confirmed that Davidoff "did not want to include [SIA] 1" in the guaranty. Accordingly, as the city acknowledges in its brief on appeal, the draft guaranty was modified so that it was expressly limited to SIA 2 and SIA 3.

In December 1999, defendants Morgan and Cunningham executed the guaranty agreement (hereafter "guaranty agreement" or "guaranty") that is the primary focus of this appeal. The guaranty agreement provides in relevant part that defendants "hereby unconditionally guarantee to the City of Novato, a municipal corporation . . . the full and timely performance of each and every one of the obligations of [MCCE] . . . as the subdivider under and as specified in those certain *Subdivision Improvement Agreements Numbers 2 and 3* by and between the City and Obligor and dated July 13, 1999 and the Deeds of Trust with Assignment of Rents of even date securing said Subdivision Improvement Agreements . . . ." (Italics added.) Under the guaranty agreement, defendants waived any right to require the city to proceed first against MCCE before proceeding against defendants to compel performance under SIA 2 and SIA 3. The guaranty agreement contains an attorney fees clause directing defendants to pay the city's legal expenses incurred in connection with enforcement of the guaranty.

The final, executed guaranty agreement contains no reference to SIA 1. Walter testified that he and Davidoff never discussed the guaranty's application to SIA 1. Walter explained at trial that he did not insist on including a specific reference to SIA 1 in the guaranty agreement because he believed that by substituting the personal guaranty for surety bonds on SIA 2 and SIA 3, the guaranty would be available as a remedy for any breach of SIA 1 under the cross-default provision previously included in each of the SIA's. However, Walter conceded at trial that he did not specifically convey his belief to Davidoff at the time they were negotiating the guaranty agreement.

### *MCCE's Failure to Perform Under SIA 1 and SIA 2*

Following the execution of the SIA's, MCCE developed and sold three homes. In December 2002, the city passed a resolution finding MCCE in default of SIA 1 as a result of its failure to complete required subdivision improvements, including creek restoration work. Walter sent a letter to MCCE on behalf of the city giving notice that it was in

6

breach of SIA 1 and was in default under SIA 2 pursuant to the cross-default provisions of the SIA's.

After MCCE failed to make progress in transferring lots 8 through 37 to the Open Space District pursuant to SIA 2, the parties entered into a First Amendment to SIA 2 that required MCCE, among other obligations, to transfer lots 8 through 37 under an Irrevocable Transfer Agreement and to complete the transfer no later than one year after March 18, 2002.

In September 2009, defendants caused MCCE to deliver to the Open Space District proposed deeds and conservation easements relating to lots 8 through 37. The Open Space District agreed to accept the deeds in April 2010, although escrow still could not close because MCCE owed back taxes on lots 8 through 37. Additionally, a deed granting an easement over lot 7 was incorrect because it was executed by a prior owner and not by MCCE, which was the owner of lot 7 at the time the Open Space District accepted the transfer documents in April 2010. According to the city, neither of these hurdles to completing the transfer—the payment of back taxes and the correction of the easement—was accomplished before the trial on the guaranty.

### Prior Litigation Involving MCCE

MCCE filed suit against the city in September 2002 alleging breach of contract. To distinguish the earlier litigation initiated by MCCE from the action that is the subject of this appeal, we refer to the earlier lawsuit as the "MCCE action" and the lawsuit giving rise to this appeal as the "guaranty action."

In the MCCE action, the city filed a cross-complaint against MCCE as well as against Morgan and Cunningham, alleging a breach of SIA 1 and SIA 2. After the MCCE action had been initiated, MCCE transferred lots 4 through 7 of the subdivision to George Morf. The city thereafter amended its cross-complaint to include Morf and Centennial, the general contractor, as cross-defendants. MCCE dismissed its complaint before trial. The city proceeded to trial in the MCCE action on its cross-complaint against MCCE, Centennial, Morgan, Cunningham, and Morf. A jury found that MCCE and Morf had breached SIA 1 and SIA 2. The jury awarded no damages for the breach.

7

The jury reached defense verdicts as to the claims against Morgan, Centennial, and Cunningham. After considering available equitable remedies, the court directed MCCE and Morf to specifically perform the obligations under SIA 1 and SIA 2. The court awarded attorney fees to the city, to be paid by MCCE and Morf, in the net amount of $476,713. The court also directed MCCE and Morf to pay the city $24,405.45 for costs incurred in the MCCE action. MCCE and Morf appealed the judgment and the order awarding attorney fees in the MCCE action.

In a decision filed in June 2009, this court reversed the trial court's judgment in the MCCE action insofar as it ordered Morf to specifically perform obligations under SIA 1. (*City of Novato v. MCCE Development, LLC* (Jun. 17, 2009, A116957) [nonpub. opn.].) We reasoned that Morf was not a party to SIA 1 and that his obligations under SIA 1 were limited to the extent they could be considered covenants that run with the land he owned. We remanded the matter for the limited purpose of considering the scope of the equitable remedy as to Morf. In addition, because Morf was not a party to SIA 1, we reversed the contractual attorney fee award as to him. We remanded for further proceedings to consider whether the attorney fee award to be paid by MCCE should be modified in light of our disposition as to Morf. In all other respects, we affirmed the trial court's judgment and attorney fee award. Therefore, we affirmed the judgment in the MCCE action as it related to MCCE, and we affirmed MCCE's obligation to pay contractual attorney fees, leaving only the amount of the fee award to be addressed on remand.

On remand, the trial court modified its judgment in the MCCE action to set forth the specific proportionate share of obligations under SIA 1 that Morf was required to perform. The court also upheld the entire fee award of $476,713 against MCCE, determining that, notwithstanding the reversal of the attorney fee award as to Morf, no apportionment or reduction in the fee award was warranted. The court awarded the city an additional $161,284.23 in fees and costs to be paid by MCCE. MCCE and Morf appealed. Their appeal of the modified judgment in the MCCE action was pending in this court when the trial court conducted a bench trial in the guaranty action, which is the

8

subject of this appeal.  In a March 2011 decision, which was filed after the trial in the guaranty action, we affirmed the modified judgment and the attorney fee award in the MCCE action.[2]

### *Trial on the Guaranty*

The city filed the guaranty action in February 2006, just before the jury trial began in the MCCE action.  The city asserted causes of action against defendants for breach of guaranty and declaratory relief.  The city alleged that defendants had breached their obligations under the guaranty agreement, and it sought damages, including attorney fees and costs, arising out of the breach.  In the declaratory relief cause of action, the city contended that defendants were liable to the city for the obligations of MCCE under the SIA's and for attorney fees and costs incurred by the city to enforce the SIA's.  The city sought a judicial determination that defendants are liable for MCCE's default under the SIA's and for the city's attorney fees and costs incurred to enforce the SIA's.  According to the city, the action on the guaranty agreement was stayed during the pendency of the first appeal in the MCCE action.

A court trial on the guaranty action commenced in July 2010.  Four witnesses testified at the trial:  (1) Walter, the city attorney, (2) defendant Morgan, (3) defendant Cunningham, and (4) Wilson Wendt, an attorney offered as an expert witness by defendants.  After the trial court orally announced its tentative decision in favor of defendants,  the city filed a request for a statement of decision in which it identified 74 controverted issues.  Among the issues the city asked the court to address was whether defendants were liable to pay the city for its attorney fees and costs incurred in enforcing SIA 1 and SIA 2.  The court filed a statement of decision before the time had expired for the city to file objections to the proposed statement submitted by defendants.  The court later vacated its initial statement of decision in order to consider the city's objections.

_____

[2]At the city's request, we take judicial notice of our nonpublished opinion filed on March 30, 2011, in the MCCE action.  (*City of Novato v. MCCE Development, LLC* (Mar. 30, 2011, A127298) [nonpub. opn.].)

9

After considering the city's objections, the trial court issued an amended statement of decision and judgment (hereafter "amended statement"). As set forth in the amended statement, the court entered judgment in favor of the defendants. With regard to the declaratory relief cause of action, the court found that, although defendants personally guaranteed MCCE's obligations under SIA 2, they did not personally guarantee MCCE's obligations under SIA 1. The court reasoned that the guaranty agreement was limited by its express terms to SIA 2 and SIA 3. The court rejected the city's argument that the cross-default provisions in the SIA's made defendants personally liable for obligations under SIA 1, concluding that the city's interpretation was not objectively reasonable. The court continued: "If the parties meant to agree that [defendants'] Personal Guaranty extended to SIA 1 it would have been a simple matter for them to say so. Not only did they not say so but defendants clearly stated, through counsel, that they would not enter into a personal guaranty with respect to SIA 1." The court stated that the city's proposed interpretation would turn SIA 2 "into a Trojan horse, slipping in an important and material contract provision which was never agreed upon." The court also noted that the city's proposed interpretation relied upon the subjective intent of its attorney.

As to the issue of attorney fees, the court addressed the city's position that attorney fees incurred in enforcing SIA 1 and SIA 2 could not be apportioned, stating as follows: "[The city] argues that this court has ruled the attorneys' fees issues as to SIA 1 and SIA 2 are 'inextricably intertwined'—citing this court's words—so that they cannot be segregated. That language is found in an order filed April 22, 2010 addressing a completely different subject. It has no relevance to the issues in this trial." Although the court rejected the city's reliance on a prior court order for the proposition that attorney fees relating to enforcement of SIA 1 and SIA 2 are inextricably intertwined, the court did not expressly address whether the attorney fee award in the MCCE action could be apportioned between those incurred in enforcing SIA 1 and those incurred in enforcing SIA 2.

With regard to the breach of guaranty cause of action, the court found "that defendants did not make a personal guaranty as to SIA 1 so there was nothing for them to

10

breach." The court further found that the city failed to "carr[y] its burden of proving that defendants breached their Personal Guaranty as to SIA 2."

The city moved to set aside the amended statement and requested a new trial. Among other things, the city argued that defendants were obligated to pay the entire amount of attorney fees awarded in the MCCE action, contending the amount of the fees was uncontradicted and there was no basis to apportion the fees between amounts incurred to enforce SIA 1 and amounts incurred to enforce SIA 2. The court denied the city's motion. In its denial order, the court addressed the city's argument regarding attorney fees as follows: "[The city] now claims for the first time that the court erred in finding that defendants had not breached the guaranty provisions of SIA 2 because in [the earlier case] the MCCE entities were ordered to pay [the city] attorney fees and costs, and those fees and costs have not been paid. That argument fails for two independent reasons. First, the order in [the MCCE action] is not yet final (contrary to [the city's] representation), so that the MCCE entities are not yet obliged to pay the fees (CCP §43). It is axiomatic that before a guarantor may be held liable, the primary creditor must have defaulted in the obligation in question. Second, [the city] failed to produce any evidence at trial on this subject. Thus, this new argument is not appropriate."

The trial court subsequently awarded attorney fees to defendants in the amount of $138,198.15 in the guaranty action. The city filed a timely notice of appeal in the guaranty action challenging the amended statement, the order denying the city's motion to set aside the amended statement and for a new trial, and the attorney fee award.

DISCUSSION

The focus of this appeal is on whether defendants are liable under the guaranty for paying all or some portion of the attorney fees and costs incurred by the city in enforcing SIA 1 and SIA 2 in the earlier MCCE action. Fundamentally, the city contends the trial court erred in concluding that the guaranty did not extend to obligations owed under SIA 1. It also claims the court failed to reach the question of whether defendants were obligated to pay attorney fees and costs incurred by the city in enforcing either SIA 1 and

11

SIA 2.  The city further challenges the determination that it failed to establish a breach of the guaranty.

**1.** ***Standard of Review and General Principles Governing Guaranty Agreements***

The parties to this appeal agree that this court should apply an independent standard of review to the interpretation of the guaranty agreement.  "The interpretation of a contract is a question of law for the court unless the interpretation depends upon the credibility of extrinsic evidence."  (*Nungaray v. Litton Loan Servicing, LP* (2011) 200 Cal.App.4th 1499, 1504.)  Consequently, we are not bound by the trial court's construction of a contract when based solely on the terms of the written instrument and there is no conflict in the evidence.  (*U.S. Leasing Corp. v. duPont* (1968) 69 Cal.2d 275, 284.)  The parties agree that, to the extent we must consider extrinsic evidence in interpreting the guaranty, we still apply independent review because the extrinsic evidence concerning the guaranty negotiations is undisputed.  (See *Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 866.)

In interpreting a contract under California law, the critical focus is upon the intent of the contracting parties "as it existed at the time of contracting, so far as the same is ascertainable and lawful."  (Civ. Code, § 1636.)  "This intention must be ascertained from the words used, after taking into consideration the entire contract and the circumstances under which it was made, including the object, nature and subject matter of the contract, and the preliminary negotiations between the parties."  (*Western Camps, Inc. v. Riverway Ranch Enterprises* (1977) 70 Cal.App.3d 714, 723; see also Code Civ. Proc., § 1860.)

A guaranty is interpreted like any other contract, with a view towards giving effect to the parties' intent.  (*U.S. Leasing Corp. v. duPont, supra,* 69 Cal.2d at p. 284; *RCA Corp. v. Hunt* (1982) 133 Cal.App.3d 903, 906.)  "Extrinsic evidence is admissible to interpret the instrument, to give it meaning to which it is reasonably susceptible [citation]."  (*RCA Corp. v. Hunt, supra,* 133 Cal.App.3d at p. 906.)  To the extent public policy may support the strict construction of surety contracts so as to protect the surety,

12

that policy "has long been held inapplicable where the guarantors gained a business or personal advantage from their guaranties."[3]  (*Ibid.*)

A guarantor's obligation is based upon the guaranty agreement and not the underlying contract the guaranty covers.  (*Neiderer v. Ferreira* (1987) 189 Cal.App.3d 1485, 1505.)  Nevertheless, "when a guaranty agreement incorporates another contract, the two documents are read together and ' "[c]onstrued fairly and reasonably as a whole according to the intention of the parties."  [Citations.]'  [Citation.]  In other words, when a party undertakes to guarantee the faithful performance of another contract, the guarantor is contracting in reference to the other contract; ' " 'otherwise it would not know what obligation it was assuming.' " ' "  (*Central Building, LLC v. Cooper* (2005) 127 Cal.App.4th 1053, 1058.)

With these principles in mind, we proceed to consider the scope of the guaranty, which bears upon both the declaratory relief and breach of guaranty causes of action.

## 2.  *Scope of the Guaranty*

The plain language of the guaranty agreement specifies that it applies to obligations owed under SIA 2 and SIA 3.  There is no mention of SIA 1.  As the trial court observed, it would have been a simple matter for the parties to say the guaranty extended to SIA 1 if that was their intention.  The parties' failure to do so permits an inference that they did not intend to include SIA 1 within the scope of the guaranty.  (Cf. *Fischer v. First Internat. Bank* (2003) 109 Cal.App.4th 1433, 1447.)

The parties' intention to limit the guaranty to SIA 2 and SIA 3 is amply supported by extrinsic evidence of the negotiations that resulted in the guaranty agreement.  The attorney for defendants, Davidoff, rejected the idea of a personal guaranty when the

---

[3]The city contends the trial court erred because it applied an incorrect legal standard in stating that personal guaranties are to be narrowly construed.  Even assuming the legal standard employed by the court was incorrect, the city has failed to demonstrate a showing of prejudice that would justify reversal.  "We do not review the trial court's reasoning, but rather its ruling.  A trial court's order is affirmed if correct on any theory, even if the trial court's reasoning was not correct."  (*J.B. Aguerre, Inc. v. American Guarantee & Liability Ins. Co.* (1997) 59 Cal.App.4th 6, 15–16.)

SIA's were originally negotiated. It was only after MCCE was unable to obtain a surety bond to cover SIA 2 and SIA 3 that the city insisted on a personal guaranty. Even then, when presented with a draft guaranty covering all of the SIA's, Morgan refused to enter into a personal guaranty of SIA 1. The guaranty was specifically modified so that it was expressly limited to SIA 2 and SIA 3. A reasonable interpretation of the evidence is that the guaranty was not intended to apply to obligations owed under SIA 1, which were covered by a surety bond.

It is immaterial that Walter, the city attorney, held the belief that obligations under SIA 1 were within the scope of the guaranty, notwithstanding the deliberate removal of any reference to SIA 1 in the guaranty and Morgan's insistence that the guaranty not apply to SIA 1. " '[E]vidence of the undisclosed subjective intent of the parties is irrelevant to determining the meaning of contractual language.' [Citation.] Rather, it is the outward manifestation or expression of assent that is controlling." (*Berman v. Bromberg* (1997) 56 Cal.App.4th 936, 948.)

Even though the guaranty only refers to SIA 2 and SIA 3, and the objective evidence tends to show that the parties intended to exclude SIA 1 from the scope of the guaranty, the city nevertheless contends that obligations under SIA 1 are incorporated into the guaranty by virtue of various provisions contained in SIA 2. First, the city relies on the cross-default provision in SIA 2 as a basis for concluding that the guaranty extends to SIA 1. Second, it claims the provision in SIA 2 incorporating the recitals, which it refers to as the "incorporation paragraph," permits the interpretation it proposes. We address these arguments in turn.

The cross-default provision in SIA 2 provides, in relevant part, that a breach or default under SIA 1 or SIA 3 is deemed a breach or default under SIA 2, affording the city "all the remedies available under this Agreement for such defaults and/or breaches of SIA #1 and/or SIA #3." As a starting point, the provision refers to *remedies* available under SIA 2 as a consequence of a breach of SIA 1 or SIA 3. It does not purport to incorporate the obligations or remedies from the other SIA's into SIA 2.

14

One remedy available under SIA 2 is an award of attorney fees to a prevailing party in litigation "arising out of or in connection with [SIA 2]." The city urges that this remedy encompasses attorney fees incurred in enforcing SIA 1, reasoning that such fees arise out of or are connected with SIA 2 by virtue of the cross-default provisions. The city's interpretation is not reasonable under the facts presented here. Considering the fee provision together with the cross-default provision, a reasonable reading of the fee provision is that it affords the city the right to recover fees incurred in enforcing SIA 2, which may be deemed in default by virtue of a default or breach under either SIA 1 or SIA 3. The cross-default provision does not import remedies from the other SIA's, including fee provisions in the other SIA's, but instead allows the city to enforce SIA 2 and seek remedies under that agreement following a breach of SIA 1. Thus, reading the guaranty agreement together with SIA 2, and in order to give effect to the parties' intentions, a reasonable reading of the reference in SIA 2 to fees "arising out of or in connection with this Agreement" is that it is limited to fees incurred in enforcing SIA 2. Interpreting the fee provision in SIA 2 to apply to fees incurred in enforcing SIA 1, as the city proposes, would contravene the intent of the parties as expressed in the guaranty and the negotiations that led up to it.

To the extent the city claims the guaranty applies to SIA 1 because it is considered a remedy available under SIA 2 following a breach of SIA 1, the interpretation likewise fails for the reason that it nullifies the plain intent of the guaranty to exclude SIA 1. The phrase "remedies available under this Agreement" in the cross-default provision is appropriately limited to remedies enumerated in SIA 2 for a number of reasons. First, SIA 2 uses the term "remedies" when referring to those remedial provisions. The use of term "remedies" in the cross-default provision presumptively means the same thing. Second, while the city may have a legal right to invoke the guaranty for remedial purposes, that does not make the guaranty a remedy available to the city under SIA 2. In several other places, SIA 2 refers to remedies "under" or as "provided in" SIA 2, as opposed to other remedies the city may have at law or in equity. In contrast with provisions that refer to remedies other than those specified in SIA 2, the cross-default

15

provision is limited to remedies "available under this Agreement." A reasonable interpretation of the cross-default provision, consistent with the intent of the parties to the guaranty, is that it is limited to remedies expressly set forth in SIA 2. The guaranty is a separate agreement and not a remedy available under the terms of SIA 2. Therefore, we are not persuaded that the cross-default provision in SIA 2 can be interpreted to include SIA 1 within the scope of the guaranty.

The city claims the so-called "incorporation paragraph"—i.e., the provision in SIA 2 incorporating the recitals as contract terms—creates an independent obligation under SIA 2 to perform the other SIA's. We disagree. The recital upon which the city focuses simply reflects that the parties to SIA 2 also entered into separate SIA's that "provide an alternative or supplemental performance by [MCCE] for completion of the necessary improvements . . . ." The recital does not impose an obligation to perform the other SIA's but simply states that the performance required by SIA 1 or SIA 3 was "alternative or supplemental" to the performance required by SIA 2.

The city also argues that principles of collateral estoppel establish that the three SIA's were one, interdependent contract. Therefore, the city argues that a guaranty as to one SIA is a guaranty of all the SIA's. As support for this proposition, the city cites a passage from the trial's court's original decision in the MCCE action in which it stated that the "three SIAs were part and parcel of one, contractual arrangement." The city also cites a passage from this court's opinion in the MCCE action in which we stated that the parties agreed " 'to memorialize the transaction in three documents.' " The city's collateral estoppel argument lacks merit.

First, the cited passage from this court's 2009 opinion does not establish that the three SIA's should be considered one agreement. We simply recited the fact that the overall transaction was split into three agreements. Further, insofar as the trial court may have found that the SIA's were part of a single contractual arrangement, the finding related to whether it was appropriate to award specific performance of SIA 1. On appeal, we affirmed the award of specific performance as to SIA 1, but not on the ground that the three SIA's were part of a single contract that included a property transfer. Rather, we

16

concluded the remedy was appropriate based on the difficulty of proving damages. We specifically declined to address the alternate theory that SIA 1 was specifically enforceable as part of an overall agreement that included a transfer of property in SIA 2. It is well settled that an affirmance on alternative grounds eliminates any collateral estoppel effect from the ground not approved. (*Zevnick v. Superior Court* (2008) 159 Cal.App.4th 76, 86; *Newport Beach Country Club, Inc. v. Founding Members of Newport Beach Country Club* (2006) 140 Cal.App.4th 1120, 1132.)

We agree with the trial court that the guaranty only extends to obligations and remedies under SIA 2 and SIA 3. It does not encompass obligations and remedies under SIA 1, including attorney fees incurred to enforce SIA 1.

### 3.    *Breach of Guaranty*

The city next contends the trial court erred in concluding that the city did not meet its burden to establish a breach of guaranty. We conclude there was no error.

To establish a breach of a guaranty, a party must prove (1) the guarantor guaranteed performance of a third party's obligations, (2) the third party defaulted on its obligations, (3) the party to whom the obligations were owed notified the guarantor of the default and demanded performance, and (4) the guarantor failed to perform the obligations. (See *Walsh v. West Valley Mission Community College Dist.* (1998) 66 Cal.App.4th 1532, 1546–1547.)

Because the guaranty did not encompass SIA 1, the city's claim fails with respect to obligations owed under SIA 1. With regard to SIA 2, the trial court concluded that the city failed to carry its burden of establishing that defendants breached the guaranty. The city complains that the trial court failed to specify the factual findings supporting its conclusion. While we tend to agree with the city that the trial court failed to make required findings supporting its conclusion, the omission is harmless for reasons we explain. (See *Sperber v. Robinson* (1994) 26 Cal.App.4th 736, 745 [court's failure to make required finding is harmless unless evidence is sufficient to support complaining party's position].)

17

The city focuses on two distinct sets of obligations arising out of SIA 2—the obligation to pay the city's attorney fees and the obligation to complete the transfer of lots 8 through 37 to the Open Space District. The trial court addressed the attorney fee obligation in its order denying the city's motion for new trial and to set aside the amended statement. It concluded that MCCE had not defaulted on an obligation to pay court-ordered attorney fees and costs because the orders awarding attorney fees and costs were not yet final. We agree with the trial court.

At the time of the trial in the guaranty action, the attorney fee award in the MCCE action was on appeal in this court. Because the award was not yet final, MCCE was not in default on any obligation to pay attorney fees and costs. Consequently, there was no default to trigger defendants' obligations under the guaranty.

The city claims that defendants waived any defense that required the city to secure final judgments against MCCE before proceeding against defendants. Although the city was entitled to proceed directly against defendants for a breach of SIA 2 by MCCE, there still must have been a default to trigger the right to enforce the guaranty. In the case of attorney fees awarded by a court, the obligation is not due until there is a final judgment. While MCCE may have been in default under SIA 2 with respect to other obligations, it was not in default of any obligation to pay attorney fees under SIA 2 at the time of trial in the guaranty action.

The city also claims that defendants were liable for breach of guaranty because MCCE failed to fulfill its obligation under SIA 2 to complete the transfer of lots 8 through 37 to the Open Space District. As support for this claim, the city contends that title had not yet cleared on the transfer of the properties to the Open Space District by the time of trial in the guaranty action. Evidence at trial purportedly showed that MCCE owed back taxes on the property and that a necessary easement across lot 7 was defective because it had not been executed by the current owner of lot 7.

It is unclear what relief the city sought to achieve in the guaranty action by claiming that MCCE breached its obligation to timely transfer the property. In its complaint, the city sought monetary damages for the breach of guaranty. Even assuming

18

the city established a breach of SIA 2 as a result of the delay in completing the property transfer to the Open Space District, the city has failed to establish that it suffered any compensable damages as a consequence of the breach. Therefore, the city failed to prove a cause of action for breach of guaranty.

**4.      *Declaratory Relief as to Fees***

The city complains that the trial court erred in failing to rule on its claim for declaratory relief concerning whether the defendants are liable to pay for all or some portion of the attorney fee awards in the MCCE action. As set forth below, we agree with the city and conclude the matter must be remanded to consider the amount of fees defendants are required to pay.

As previously noted, the trial court ruled that the scope of defendants' guaranty extended only to SIA 2 and not to SIA 1. We agree with this determination for reasons we have explained. In light of the scope of the guaranty, the question remains how the attorney fee awards in the MCCE action should be apportioned between amounts incurred to enforce SIA 1 and amounts incurred to enforce SIA 2. As to the apportionment issue, the amended statement contains the following analysis: "[The city] argues that this court has ruled the attorneys' fees issues as to SIA 1 and SIA 2 are 'inextricably intertwined'—citing this court's words—so that they cannot be segregated. That language is found in an order filed April 22, 2010 addressing a completely different subject. It has no relevance to the issues in this trial."

Defendants suggest the amended statement is more than adequate, arguing it is clear the lower court (1) issued declaratory relief, (2) rejected the notion that the attorney fee awards cannot be segregated between SIA 1 and SIA 2, and (3) ruled that the city is not entitled to any portion of the attorney fee awards in the MCCE action because it had not met its burden of establishing, with particularity, the portion of the attorney fee awards attributable solely to SIA 2. We do not agree with defendants that the amended statement is adequate or that it necessarily supports the inferences defendants have drawn.

19

Contrary to defendants' characterization of the amended statement, it does not contain factual findings concerning whether the attorney fee awards in the MCCE action can be segregated between SIA 1 and SIA 2. Instead, the court simply rejected the contention that it had previously decided the issue. The court did not make any affirmative finding that it is impossible or impracticable to apportion the attorney fee awards between SIA 1 and SIA 2.

Part of the problem here stems from the "all or nothing" positions of the parties. The city claims it is entitled to the entirety of the fee awards in the MCCE action because the attorney fee provision in SIA 2 is broad enough to encompass fees incurred in enforcing SIA 1, and that in any event it is unnecessary and impracticable to apportion the fees because they all arise out of a common core of facts. For their part, defendants seemed to concede in the trial court that they were responsible for some portion of the attorney fees, urging the court in their trial brief to determine which portion of the fees were attributable to SIA 2. Nevertheless, they claim on appeal it was the city's burden in the first instance to establish which fees were attributable to SIA 2. According to defendants, because the city failed to satisfy its burden to put forth evidence of which fees were attributable to SIA 2, it is not entitled to any portion of the fees. Thus, on the one hand, the city claims it is entitled to all of the fees previously awarded because the fees cannot be segregated between SIA 1 and SIA 2, whereas, on the other hand, defendants claim the city is entitled to nothing because it failed to establish which fees are solely attributable to SIA 2.

For reasons we have already explained, we reject the city's contention that the fee provision in SIA 2 is broad enough to encompass SIA 1. The city's broad interpretation of the fee provision is unreasonable because it would contravene the parties' intent to limit the guaranty to obligations owed under SIA 2. This legal conclusion about the scope of the fee provision in SIA 2 does not end, the inquiry, however. We are left with the question of whether and to what extent the attorney fees awarded in the MCCE action can be segregated between SIA 1 and SIA 2. This inquiry, which is essentially factual in nature, has yet to be addressed by the trial court.

20

If, as the city contends, the fee issues involving SIA 1 and SIA 2 are inextricably intertwined as a factual matter, then the court in its discretion could determine that defendants owe the city the entirety of the fee awards in the MCCE action, without apportionment. (See *Abdallah v. United Savings Bank* (1996) 43 Cal.App.4th 1101, 1111.) By contrast, if the trial court agrees with defendants that it is possible as a factual matter to segregate the fees between SIA 1 and SIA 2, then the court should determine the proper apportionment in the context of the declaratory relief cause of action.

We reject defendants' contention that the city is entitled to nothing because it has not shown in the first instance which portion of the fees is attributable to SIA 2. The defendants' position effectively puts the cart before the horse and requires the city to prove which portion of the fees is attributable to SIA 2 before there has even been a determination that an apportionment is practically feasible. The city has consistently taken the position that the attorney fees awarded in the MCCE action cannot practically be apportioned between SIA 1 and SIA 2. This position is not wholly unreasonable, even if it ultimately proves to be wrong. If the court finds that it is practically feasible to apportion the attorney fee awards between SIA 1 and SIA 2, then the city should be afforded an opportunity to comply with the court's ruling and show which portion of the fees is attributable to SIA 2.

As a final matter, we observe that the fee award's lack of finality as of the time of trial does not preclude declaratory relief. Although we concluded that the breach of guaranty cause of action fails because the attorney fee award was not final at the time of trial, the same conclusion does not apply to the declaratory relief claim. Section 1060 of the Code of Civil Procedure permits a declaratory relief action in cases involving an "actual controversy" as to rights or duties of the respective parties under a written instrument. In a case where a multiplicity of actions would result absent declaratory relief, it is an abuse of discretion to deny declaratory relief. (See *Doan v. State Farm General Ins. Co.* (2011) 195 Cal.App.4th 1082, 1095.) At the time of trial in this case, there was an actual controversy concerning defendants' obligation to pay the attorney fees awarded in the MCCE action. Although the pending appeal in the MCCE action

21

could have conceivably resulted in a slight reduction in the fee award, the fact remains that MCCE was liable for fees and costs attributable to SIA 1 and SIA 2, regardless of the outcome of the pending appeal. The apportionment issue was ripe for declaratory relief despite the fact that the fee awards were not yet final at the time of trial.

**5.** *Attorney Fees*

The trial court awarded attorney fees to defendants in the guaranty action totaling $138,198.15. The city argues that we should reverse the attorney fee award based on the principle that an award of attorney fees " 'falls with a reversal of the judgment on which it is based.' " (*California Grocers Assn. v. Bank of America* (1994) 22 Cal.App.4th 205, 220.) In this case, our reversal is limited to one issue raised in the declaratory relief cause of action. The question remains whether our limited reversal compels reversal of the postjudgment attorney fee award in its entirety. Under the circumstances presented here, we conclude it does.

In *Ventas Finance I, LLC v. Franchise Tax Bd.* (2008) 165 Cal.App.4th 1207, 1211–1212, the Court of Appeal reversed a postjudgment attorney fee award in its entirety following a partial reversal of a judgment directing the Franchise Tax Board to redetermine and limit the amount of a refund. As a consequence of its partial reversal of the judgment, the appellate court also reversed the postjudgment attorney fee award, reasoning that it could not say with certainty whether the trial court would exercise its discretion to award attorney fees in the same manner in light of the limited reversal. (*Id.* at p. 1212.)

This case presents an even more clear cut example in which it is appropriate to reverse an attorney fee award following a partial reversal. It is far from clear that the trial court would exercise its discretion to award contractual attorney fees in the same manner in light of our partial reversal. The reversal, while limited, goes to the heart of the dispute between the parties—i.e., whether and to what extent defendants are liable for attorney fees and costs awarded in the MCCE action. Accordingly, the attorney fee award in the guaranty action must be reversed in its entirety. After the trial court issues declaratory relief on the question of the extent to which the guaranty obligates defendants

to pay attorney fees and costs awarded to the city in the MCCE action, the court must reconsider the propriety and amount of the contractual attorney fee award in the guaranty action.

## DISPOSITION

We reverse and remand with respect to the declaratory relief cause of action for a determination of the amount of the attorney fees and costs awarded in the MCCE action that defendants are obligated to pay to the city as a consequence of their personal guaranty.  In light of our disposition, we reverse the award of attorney fees in this action.  In all other respects, we affirm the judgment.  Each party shall bear its own costs on appeal.

_____
McGuiness, P.J.

We concur:

_____
Pollak, J.

_____
Jenkins, J.