[No. B067205. Second Dist., Div. Two. June 14, 1994.]

ZANWIL SPERBER, Plaintiff and Appellant, v.
MARK P. ROBINSON et al., Defendants and Respondents.

738

**COUNSEL**

David S. Sperber for Plaintiff and Appellant.

James N. Kenealy, Charlston, Revich & Williams, Timothy J. Harris and Thomas Van Flein for Defendants and Respondents.

## OPINION

**BOREN, P. J.**—The trial court ruled that appellant Zanwil Sperber had failed to establish an equitable lien and directed the jury to return a verdict in favor of respondents on appellant's cause of action for declaratory relief. Appellant contends: "I. The court erred in directing a verdict in favor of defendant Robinson since there was substantial evidence tending to prove a lien[;] II. A lien was created by the conduct of the parties in looking to the res for payment of plaintiff[;] III. The judgment in favor of defendant Hopkins is not proper[; and] IV. The court erred in denying plaintiff's motion to compel production of documents." We affirm.

### STATEMENT OF THE CASE

Appellant filed a complaint with four causes of action. The first two causes of action were against Christine J. Pescod (Pescod) for payment of her psychotherapy bill of $86,029.64 and for the reasonable value (stated to be $12,188) of appellant's services as an expert witness. The third cause of action was against respondent Mark P. Robinson, Sr. (Robinson) and was for the reasonable value of appellant's services as an expert witness in the amount of $12,188. The fourth cause of action was for declaratory relief against Pescod, Robinson and C. Mark Hopkins (Hopkins). The object of the fourth cause of action was to establish appellant's right to an equitable lien in the amount of $98,217.64 plus interest as to a judgment in favor of Pescod in an underlying personal injury action.

After appellant and Pescod reached a compromise agreement, the trial court granted appellant's request to dismiss Pescod and a dismissal was entered as to the first two causes of action.

Prior to trial, appellant filed a motion to compel production of documents. At appellant's request, that motion was placed off calendar. Almost a month later, appellant filed a second motion to compel production of documents, which the trial court denied as not timely filed.

After jury trial commenced, the trial court granted Robinson's motion for nonsuit as to the declaratory relief cause of action but set it aside pursuant to Robinson's subsequent motion. At the conclusion of testimony, the trial court, upon motion of Robinson and Hopkins, directed the jury to enter a verdict in favor of Robinson and Hopkins on the declaratory relief cause of action to establish a lien, and the jury did so. On the cause of action for expert witness fees, the jury found in favor of appellant and assessed his damages in the amount of $7,343. The trial court then entered judgments in

favor of appellant and against Robinson on the cause of action for expert witness fees and against appellant and in favor of Robinson and Hopkins on the declaratory relief cause of action. The judgment as to Hopkins was granted pursuant to Code of Civil Procedure section 631.8.

## STATEMENT OF FACTS

Appellant is an eminent clinical psychologist with a private practice who also serves as chief psychologist in the department of psychiatry at Cedars-Sinai Medical Center. Pescod was attacked in a hotel and retained an attorney, Marvin Cherin (Cherin), in order to sue the hotel. At approximately the same time—January 1982—Pescod's boyfriend referred her to appellant to obtain psychological services concerning her condition after the attack. Pescod was living on a secretary's salary and could not have paid appellant for his services. On Pescod's initial visits with appellant, she did not discuss payment with him "because of the shape I was in." However, she thought that he could be paid out of the proceeds of the "legal trial that I was about to pursue."

Appellant received a letter from Cherin's law firm dated January 11, 1982, requesting that he provide a narrative psychological report to the law firm. The letter also told appellant to include a copy of the billing and informed him that "Any liens submitted by your office will be honored and paid out of any settlement." After receiving this letter, appellant only asked Pescod to sign a waiver of confidentiality concerning such a report along with the direction that appellant's bills be sent to Cherin's office.

Pescod subsequently replaced Cherin with other attorneys. At some point, Hopkins began handling Pescod's case, and thereafter Robinson took over. In January 1986, appellant wrote to Hopkins enclosing an unsigned lien form and requesting that Pescod and Hopkins execute that form. This was the first time in appellant's 30-year practice that he had ever used such a form. Hopkins signed the lien form and forwarded it to Pescod at her residence to obtain her signature. A copy of this lien form with only Hopkins's signature on it and dated January 20, 1986, was found in Robinson's files during discovery. Pescod testified she had signed it and had sent it back to Hopkins's office.[1] Appellant forwarded a second lien form to Hopkins, which Hopkins also signed and forwarded to Pescod. Pescod testified that she did

---

[1] Pescod's deposition testimony was as follows: "Q. What did you do with [the lien] after it came in the mail? [¶] A. Send [sic] it back. [¶] Q. To whom? [¶] A. Mark's office. [¶] Q. Is that Mark Hopkins or Mark Robinson? [¶] A. Mark Hopkins. [¶] Q. Did you do anything with it before you sent it back? Did you sign it? [¶] A. I think so. [¶] Q. Well, did you ever tell anybody that you didn't want to sign it? [¶] A. No. [¶] Q. When you sent it back to Mark's office, was there a cover letter? [¶] A. I don't remember. I don't think so. I really don't

not receive this form and the one in Robinson's files was signed only by Hopkins and dated December 16, 1986.

Appellant never received back a lien form signed by Pescod although eventually he received one signed by Hopkins. During the period he counseled Pescod, appellant sent his bills to Robinson's office. Robinson never inquired about the bills. Subsequently, Robinson requested appellant's assistance to be a "key witness" at trial and to help prepare Pescod for her testimony. At no time did Robinson and appellant discuss the billing, and no rates or percentages were discussed. Appellant intentionally avoided asking Pescod about the lien or the billing.

Prior to trial in the underlying case, Robinson met several times with appellant. Robinson intended to use appellant as a percipient witness, the treating doctor of the patient, Pescod. Robinson used "Dr. Dunn," a psychiatrist-neurologist, as his expert witness. When appellant met with Robinson prior to appellant's testimony at Pescod's underlying trial, appellant asked Robinson to try to get a lien signed by Pescod. Robinson asked, but Pescod refused and told Robinson she would not sign a lien form. Later, appellant claimed he did have a signed lien form but Robinson never saw one signed by Pescod, although he did see one signed by Hopkins alone. In Robinson's view, a lien had no validity unless it was signed by the client. Appellant and Robinson did not discuss payment of Pescod's bills, and Robinson was merely aware of appellant's hourly rate.

The underlying case against the hotel went to trial. Robinson conducted only a short direct examination of appellant, but appellant was then subjected to an extensive cross-examination. Pescod received a judgment in the amount of $326,000. Pescod had been offered a settlement in the case for $120,000 but had rejected that offer in view of the size of the debt she owed appellant. As the net recovery, Pescod was paid $79,526.31. The rest of the recovery was disbursed to cover attorney fees and costs.

Subsequent to trial, appellant presented to Robinson two bills, one for psychiatric services and the second for his trial testimony. The latter bill was for $12,188, which Robinson thought excessive. In telephone conversations, Robinson told appellant that the amount he was asking was unreasonable and that no lien existed. In August 1988, Robinson made out two checks to appellant, the first in the amount of $4,900, which was the same amount

remember. [¶] Q. But your memory is you did sign it? [¶] A. It was years ago. [¶] Q. Your memory is you received one of those two? [¶] A. I think so. Yeah. [¶] Q. Do you recall which of the two you received? [¶] A. No, I don't. [¶] Q. Your memory is you sent it back? [¶] A. Yes."

Robinson had paid to Dr. Dunn, his expert witness. The second check was in the amount of $7,288, which is the difference between the $12,188 amount appellant requested for his trial services and the amount Robinson thought was reasonable for those services. However, Robinson did not tender the checks to appellant after learning from appellant and his attorney that the amount of the second check would not be credited against Pescod's bill for psychological services and that appellant intended to attempt to hold Robinson legally responsible for the entire stated amount of the fees for psychological treatment provided to Pescod—$94,200. Pescod had instructed Robinson not to pay appellant's psychological services bill.

## DISCUSSION

### I

On appeal, appellant contends that the question of whether or not he had a lien was one for the jury and that the trial court erred in taking that question from the jury by directing a verdict in favor of respondents. These contentions are without merit.

After settling with Pescod, only the fourth cause of action of the complaint alleged a lien, and that cause of action was to declare an equitable lien in appellant's favor. By its very terms, an action to establish an equitable lien is an equitable proceeding. Therefore, there is no right to a jury trial except to the extent that the claimant also seeks a personal judgment against the debtor. (*Curnow* v. *Blue Gravel etc. Co.* (1885) 68 Cal. 262, 264 [9 P. 149]; *Grade-Way Construction Co.* v. *Golden Eagle Ins. Co.* (1993) 13 Cal.App.4th 826, 835, fn. 8 [16 Cal.Rptr.2d 649].) Thus, the trial court properly reserved for itself the determination of whether or not the evidence established an equitable lien and directed the jury to enter a verdict reflecting the trial court's determination. This left for the jury only the task of determining the reasonable value of appellant's services as a consultant and witness in the underlying trial, an issue set forth in the third cause of action.

Moreover, appellant has not preserved this issue for appeal. At trial, counsel for appellant agreed that the issue of whether or not there was an equitable lien established was one for the trial court alone and that the jury's role would be only to determine the amount of any such lien.[2] Such agreement constitutes a waiver of the issue, since appellant and counsel

---

[2]Counsel for appellant told the trial court: "Your Honor, I submit that the whole thing should be tried by the court since it is an equitable action and it's not appropriate for there to be a jury, and I would move the court to rule that this is a legal matter and is an equitable

acquiesced in and contributed to any such error. (See 9 Witkin, Cal. Procedure (3d ed. 1985) §§ 305-308, pp. 316-318.)

An equitable lien may be created by the conduct of the parties. (*Dodd* v. *Cantwell* (1960) 179 Cal.App.2d 727 [4 Cal.Rptr. 113].) Our review of the trial court's determination of the issue is under the usual substantial evidence standard.[3] Under that standard, we view the evidence in the light most favorable to defendants and uphold the judgment if it is supported by substantial evidence. (*Robert H. Jacobs, Inc.* v. *Westoaks Realtors, Inc.* (1984) 159 Cal.App.3d 637, 642 [205 Cal.Rptr. 620]; *Rodde* v. *Continental Ins. Companies* (1979) 89 Cal.App.3d 420, 423-424 [152 Cal.Rptr. 500].) Viewing the evidence presented in the record in the foregoing light, we find there is substantial evidence to support the trial court's determination and the ensuing verdicts.

Appellant presented no evidence that he had ever received a lien form signed by Pescod. The only evidence presented at all that Pescod has signed such a lien form was her deposition testimony in which, as to the question of whether she had signed the form, she responded, "I think so." The trial court viewed this testimony as highly suspicious and declined to credit it. That is because this deposition testimony was given only after appellant and Pescod reached what was referred to by both sides as a "deal" in which Pescod was dismissed from the lawsuit in return for her deposition. This deposition testimony contrasted with that of Robinson, who stated that Pescod had refused to sign a lien form and told Robinson that she would not do so. Subsequently, according to Robinson's testimony, Pescod instructed him not to pay appellant's psychological services bill. Moreover, as Robinson testified, appellant and Robinson never discussed payment of Pescod's bills, and Robinson was merely aware of appellant's hourly rate. Added to the foregoing evidence is the testimony of appellant, who stated that he intentionally avoided asking Pescod anything about the lien or the billing for his services.

In light of the foregoing evidence, the trial court was justified in concluding that responsibility to pay for appellant's psychological services to Pescod lay with Pescod. Without a lien form signed by Pescod, Robinson was without notice of any lien and was under no obligation to set aside funds regarding appellant's claim. Nor did Robinson do anything which can be reasonably construed as misleading appellant into believing a lien had been created in appellant's favor.

---

matter to be determined by the court, and there is no basis for a jury, and the court can just decide everything . . . ."

[3]Since this issue is an equitable one which was not for the jury's determination, we do *not* review pursuant to the standard pertaining to review of directed verdicts. (See *Dailey* v. *Los Angeles Unified Sch. Dist.* (1970) 2 Cal.3d 741, 745 [87 Cal.Rptr. 376, 470 P.2d 360].)

While Hopkins had in fact signed a lien form in anticipation that Pescod would also sign, no evidence was presented that he ever received a form signed by Pescod. Moreover, Hopkins had no control whatsoever concerning the judgment that Pescod received in the underlying case, and so Hopkins could not be subjected to any liability with respect to the disbursement of the funds received on the judgment.

## II

■ Appellant also assigns as reversible error alleged deficiencies in the trial court's statement of decision. Appellant contends that the statement of decision was issued "late" and that the decision "does not in any way explain the factual and legal basis for the court's decision."

We first of all agree with Robinson that appellant has waived the issue on appeal. Appellant called none of the alleged deficiencies in the statement of decision to the attention of the trial court and did not object to it. "[I]t would be unfair to allow counsel to lull the trial court and opposing counsel into believing the statement of decision was acceptable, and thereafter to take advantage of an error on appeal although it could have been corrected at trial. . . . It is clearly unproductive to deprive a trial court of the opportunity to correct such a purported defect by allowing a litigant to raise the claimed error for the first time on appeal." (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1138 [275 Cal.Rptr. 797, 800 P.2d 1227].)

■ Moreover, the statement of decision was not untimely. Code of Civil Procedure section 632 requires that the trial "court shall issue a statement of decision explaining the factual and legal basis for its decision as to each of the principal controverted issues at trial upon the request of any party appearing at the trial. The request must be made within 10 days after the court announces a tentative decision . . . ." Thus, although a time limit for requesting a statement of decision is provided, no time limit for the issuance of one is specified in section 632. Neither does appellant provide us with any authority for his claim that the court's issuance of the statement of decision was a "late filing." The trial court orally stated its ruling on March 23, 1992, gave judgment to Robinson and Hopkins as to the special verdicts regarding the establishment of lien on March 25, 1992, and granted Hopkins's motion for judgment pursuant to Code of Civil Procedure section 631.8 on April 2, 1992. Appellant did not request the statement of decision until April 7, 1992, and the trial court issued the signed statement of decision in May, after hearing and denying appellant's motion for new trial on May 6, 1992. We see nothing either unreasonable or prejudicial as to appellant concerning the timeliness of the filing of the statement of decision.

Finally, we have examined the statement of decision filed by the trial court and find that it adequately explains "the factual and legal basis for [the court's] decision as to each of the principal controverted issues at trial . . . ." (Code Civ. Proc., § 632.) ▉ It is settled that "[i]n rendering a statement of decision under Code of Civil Procedure section 632, a trial court is required only to state ultimate rather than evidentiary facts; only when it fails to make findings on a material issue which would fairly disclose the trial court's determination would reversible error result. [Citations.] Even then, if the judgment is otherwise supported, the omission to make such findings is harmless error unless the evidence is sufficient to sustain a finding in the complaining party's favor which would have the effect of countervailing or destroying other findings. [Citation.] A failure to find on an immaterial issue is not error. [Citations.] The trial court need not discuss each question listed in a party's request; all that is required is an explanation of the factual and legal basis for the court's decision regarding the principal controverted issues at trial as are listed in the request. [Citation.]" (*Hellman* v. *La Cumbre Golf & Country Club* (1992) 6 Cal.App.4th 1224, 1230 [8 Cal.Rptr.2d 293].) We therefore reject appellant's contention.

### III

Appellant's final contention is that the trial court committed prejudicial error in denying his motion to compel production of documents. The trial court denied the motion on the ground that the motion was not timely filed. The trial court's ruling was proper.

Code of Civil Procedure section 2031, subdivision (*l*), requires that such a motion to compel be given "within 45 days of the service of the response" which the demanding party deems to be incomplete, inadequate, evasive, or finds that an objection in response is without merit or too general. The facts of the instant case are that Robinson's response to the request for production of documents was served by mail on May 29, 1991. Thus, allowing five days for mail service pursuant to section 1013, subdivision (a), of Code of Civil Procedure, the last date upon which appellant could have filed a timely motion to compel was July 18, 1991. However, appellant did not file his motion to compel until September 23, 1991.

Appellant can take no solace in the fact that he filed an earlier motion to compel giving notice that a hearing on the motion would be heard on August 27, 1991. Appellant effectively withdrew that motion by unilaterally requesting it be placed off calendar. Appellant then filed an entirely new motion, which gave notice for hearing on November 4, 1991. Subdivision (*l*) of Code of Civil Procedure section 2031 provides: "Unless notice of this motion is

given within 45 days of the service of the response . . . or on or before any specific later date to which the demanding party and the responding party have agreed in writing, the demanding party waives any right to compel a further response to the inspection demand." ▮ The failure to make this motion within the specified period constitutes a waiver of any right to compel a further discovery response. (*Standon Co.* v. *Superior Court* (1990) 225 Cal.App.3d 898, 902 [275 Cal.Rptr. 833].) Thus, the trial court properly ruled that appellant's motion filed on September 23, 1991, was untimely filed.

In any event, as the trial court noted when appellant tried to bring the issue again under the color of an oral *in limine* motion, the cost sheet or other financial records concerning the underlying judgment were essentially irrelevant. If appellant had a valid lien, it would have taken precedence over the costs and the amount distributed to Pescod. Thus, denial of the motion to compel—had it been timely presented—would not have been error, or at the very least it would have been harmless error.

### DISPOSITION

The judgment is affirmed.

Gates, J., and Fukuto, J., concurred.