Filed 3/16/23  Le v. The Regents of the U. of Cal. CA1/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| LOAN K. LE,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>THE REGENTS OF THE UNIVERSITY OF CALIFORNIA,<br><br>        Defendant and Respondent. | A162114<br><br>(Alameda County<br>Super. Ct. No. RG18913026)<br><br>ORDER MODIFYING OPINION AND DENYING REHEARING<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on February 23, 2023, be modified as follows:

1.  On page 15, footnote 10, at the end of the footnote text, add the following:

> In a petition for rehearing, Le contends that Garcia Bedolla retaliated against Le by undermining Le's ability to perform her job, asserting that she cited those events in a footnote in her opening brief.  It is well established, however, that "[f]ootnotes are not the appropriate vehicle for stating contentions on appeal."  (*Sabi v. Sterling* (2010) 183 Cal.App.4th 916, 947; *Unilogic, Inc. v. Burroughs Corp.* (1992) 10 Cal.App.4th 612, 624, fn. 2 ["We do not view as

adequate to preserve an issue on appeal . . . one footnote mention of [it]."].)

There is no change in the judgment.

Appellant's petition for rehearing is denied.

Dated:

_____
Humes, P.J.

A162114
*Le v. The Regents of the University of California*

Filed 2/23/23  Le v. The Regents of the U. of Cal. CA1/1 (unmodified opinion)
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| LOAN K. LE,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>THE REGENTS OF THE<br>UNIVERSITY OF CALIFORNIA,<br><br>    Defendant and Respondent. | A162114<br><br>(Alameda County<br>Super. Ct. No. RG18913026) |

Plaintiff Loan K. Le, Ph.D. appeals from a summary judgment granted in favor of defendant The Regents of the University of California (the Regents) on Le's harassment and retaliation claims.  We affirm.

## I.  BACKGROUND

### A.  Stalking and Harassment[1]

In 2009, Le was a doctoral candidate in political science at the University of California, Berkeley.  According to the operative complaint, she decided to replace one of her dissertation advisers, Professor Robert Van Houweling, because "he seemed to pay her an unusual, and at times,

_____

[1] Some of the facts regarding the alleged stalking and harassment of Le by Professor Robert Van Houweling are taken from the second amended complaint.

inappropriate amount of attention." She reluctantly changed her mind and reinstated Van Houweling after he pressured her to do so.

Soon thereafter, Le alleges, Van Houweling began to aggressively stalk her. Le saw him lurking in her neighborhood and staring at her when she was out running and doing other daily activities, including exiting a coffee shop, dropping off her son at school, driving out of a doctor's parking lot, having lunch, and walking home from Whole Foods. She also saw him lurking outside of her apartment in Los Angeles when she was working there as a visiting assistant professor. Le received flowers at her residence from an anonymous person. She later became the victim of a mailbox break-in, identity theft, an apartment break-in, and her car's tire was punctured. Le believed Van Houweling was behind all of these stalking and harassment incidents. With the help of an attorney, Le obtained records of her criminal complaints from the UCLA[2] police department but discovered they did not investigate her complaints and included facts in their police reports that were completely fabricated. The harassment and stalking continued "until at least 2013."

Le alleges she reported the harassment and stalking on numerous occasions to professors in the department of political science (department) beginning in June 2010. The chair of the department, Taeku Lee, reported Le's complaints to the office of prevention of harassment and discrimination, but the office failed to follow up with Le or adequately investigate her complaints. Instead, Lee discouraged Le from pursuing her case by telling her that the Title IX office stated they had to "demonstrate 'loyalty' to the University" and side with Van Houweling because Le had graduated. He also told her Van Houweling had " 'all the power' " and that she " 'had none.' "

---

[2] Apparently, the University of California, Los Angeles (UCLA).

Le further alleges that the Regents failed to conduct an adequate investigation into her complaints and concealed records of her complaints. Nonetheless, the Regents assisted Van Houweling in 2011 with filing a false police report against Le for making false harassment claims.

## B. Le's Employment

Le worked for the University of California, Berkeley's Center for Latino Policy Research (CLPR) for one academic year in 2013 and 2014.

In July 2013, Le asked to meet with Professor Lisa Garcia Bedolla, the chair of the CLPR. During the meeting, Le told Garcia Bedolla about what she had been working on in her postdoctoral work at UCLA. Le also told Garcia Bedolla that she had complained to the University about stalking and harassment by a faculty member and that the University had mishandled her complaint.[3] According to Le, Garcia Bedolla warned her not to " 'take on' " the Regents, as it "was very good at covering up negative information."[4]

At the time, Garcia Bedolla was overseeing a project involving an in-depth analysis of California voters. Sometime after her meeting with Le, Garcia Bedolla e-mailed her and met with her about working on the project. In August 2013, the Regents hired Le at Garcia Bedolla's request to provide research assistance for the project. Her term was set to run from August 15, 2013, to June 20, 2014.

_____

[3] At her deposition, Garcia Bedolla stated that Le told her someone had broken into her apartment at UCLA and she had reported it to police, but she did not say who it was. Le also told Garcia Bedolla she thought she was being stalked, that it was someone in the department, and that she had reported it to the department. That was the first time Garcia Bedolla heard that Le reported being stalked to the department.

[4] Garcia Bedolla denied discouraging Le from filing a complaint against the Regents.

3

## C. EEOC Complaint

In late November 2013, Le filed a complaint with the Equal Employment Opportunity Commission (EEOC) based on Van Houweling's alleged harassment and stalking and the Regents' alleged failure to adequately investigate, preserve information, or provide documentation to Le. In March 2014, she filed a supplemental letter with the EEOC providing further information in support of her complaint. In April, Le alleges she "learned from the EEOC that they had notified [the Regents] of her claims of harassment, stalking, and retaliation."

## D. Publication of CLPR Reports

Sometime after April 11, 2014, Le submitted a draft version of her significant contributions to the manuscripts for the CLPR project, which included her data preparation and analysis for the research to date. At the time, Le was searching for a full-time academic position, and hoped that the attention generated from the articles would "springboard" her into such an appointment. She continued to follow up with Garcia Bedolla for additional work, but was told in August 2014 that she would be contacted again when Garcia Bedolla received feedback from the program officer.[5] Due to Garcia Bedolla's promise to follow up, Le did not monitor whether the manuscripts she worked on were published. On June 30, 2015, Garcia Bedolla informed Le via e-mail that she would be excluded from authorship on several manuscripts, "despite promises to the contrary" prior to her filing of the EEOC complaint. Unbeknownst to Le, Garcia Bedolla had published the manuscripts electronically on February 18, 2015.

---

[5] In June 2014, Garcia Bedolla offered Le a one- or two-month extension of her employment. Le declined the offer.

## E. Le's DFEH Complaint and Lawsuit

On June 9, 2016, Le filed a precomplaint inquiry with the Department of Fair Employment and Housing (DFEH). Her signed complaint was filed the next month, in July 2016.[6] On July 18, 2017, the DFEH issued a right to sue letter.

One year later, Le filed this action, alleging three claims under the Fair Employment and Housing Act (FEHA; Gov. Code, § 12900 et seq.) against the Regents for harassment (hostile work environment), retaliation, and failure to prevent harassment and retaliation.

Le subsequently filed a first amended complaint (FAC). The trial court overruled a demurrer filed by the Regents, but stayed all proceedings and ordered the Regents to file its motion for summary judgment based on Le's alleged failure to exhaust her administrative remedies.

## F. Summary Judgment Motion and Continuances

The Regents noticed the hearing on its motion for summary judgment to take place on August 19, 2019. Le filed a motion seeking leave to file an amended complaint two days before the hearing. The trial court denied the initial motion for summary judgment without prejudice and continued the hearing.

In September 2019, the parties stipulated to allow Le to file a second amended complaint (the operative complaint). The parties refiled their respective summary judgment papers in November 2019 to have the motion heard in January 2020.

---

[6] Le had several communications with the DFEH about corrections to her complaint before it was signed and filed. For purposes of summary judgment, the Regents concedes that Le's submission of the precomplaint inquiry was the operative date of her DFEH filing.

In January 2020, the trial court issued an order continuing the hearing on the summary judgment motion to April. The court noted that its efforts to resolve promptly the Regents' contention that the court lacked jurisdiction over Le's action because she did not timely present a claim to the DFEH had not been successful thus far "due to the parties' lack of diligence." The court observed that it had overruled the demurrer to the FAC in March 2019, and agreed with the Regents' assertion that Le was largely responsible for the delays. The court then described "in no particular order" the sources of its dissatisfaction with the evidentiary record presented by the parties and their memoranda of points and authorities. The court (1) admonished the Regents for vacillating on whether Le can avail herself of the continuing violation doctrine and directed the Regents to withdraw the argument or provide Le with relevant discovery, (2) ordered the parties to provide supplemental briefing on Le's delayed discovery claim, and (3) instructed the attorneys to advise the court whether the Legislature's recent amendment of Government Code section 12960 had any significance for the issues presented by the summary judgment motion. The court also indicated the evidence before it did not clearly indicate whether a hypothetical reasonable jury could find Garcia Bedolla retaliated against Le because Le did not state in her declaration that Garcia Bedolla was aware of her filing of the EEOC complaints in 2013 and 2014. The court "strongly encouraged" the Regents to take Le's deposition regarding the matters set forth in her declaration. The trial court instructed the parties to file supplemental memoranda and present additional evidence, and continued the hearing to April 2020.

The parties stipulated to continue the summary judgment motion hearing from April to June 2020, then again to October 2020, because scheduling conflicts and the COVID-19 pandemic made it difficult to complete

the necessary discovery earlier.  The trial court eventually continued the summary judgment hearing once more to December 2020, because it did not receive a courtesy copy of Le's supplemental briefing in time for the scheduled hearing.

### G. *Motion to Compel Discovery Responses*

After the trial court's January 2020 order, the parties met and conferred regarding the Regents' responses to discovery that were served in August 2019.  The parties continued to meet and confer multiple times over the ensuing months.

Despite multiple promises to provide further responses to Le's discovery requests, the Regents did not do so until after Le attempted to schedule an informal discovery conference with the trial court.  In mid-August 2020, the Regents promised to provide supplemental discovery responses by August 21.

On August 19, 2020, Le filed a motion to compel with a hearing date of October 14, 2020.  Two days later, the Regents provided further discovery responses and produced 635 pages of documents.  The Regents asked Le to withdraw her motion to compel in light of the supplemental responses and production of documents, but she declined.

In September, the parties stipulated to continue the hearing on the summary judgment motion, and on September 14, the trial court continued the hearing from October 1 to October 29, 2020.  Le's counsel also agreed to move the hearing on the motion to compel from October 14 to December 3, 2020—after the continued summary judgment hearing.  On October 14, the trial court continued the hearing on the motion to compel to December 3.

## H. Supplemental Briefing and Orders on Summary Judgment and Motion to Compel

On October 15 and 22, respectively, the parties filed supplemental briefs and evidence as ordered by the trial court, addressing whether Garcia Bedolla had notice of Le's protected activity, and whether the delayed discovery doctrine should apply. In her supplemental opposition, Le requested a continuance pursuant to Code of Civil Procedure[7] section 437c, subdivision (h) in the event the court were inclined to grant summary judgment, to allow Le to obtain additional discovery and present additional evidence as to Garcia Bedolla's knowledge regarding Le's filing of the EEOC complaint.

After the parties filed their supplemental briefing, the court continued the October 29 hearing on the summary judgment motion to December 17, 2020, because Le's counsel had failed to provide a courtesy copy of her supplemental briefing. The court subsequently continued the motion to compel to December 17 as well, because the Regents failed to deliver a courtesy copy of its opposition to that motion.

On December 17, 2020, the trial court held the hearing on the summary judgment motion. The same day, it continued the hearing on Le's motion to compel to February 4, 2021.

The trial court granted summary judgment and entered a judgment in in favor of the Regents. The court concluded the Regents made a prima facie showing that Le failed to exhaust her administrative remedies by filing a timely complaint with DFEH because she failed to file her complaint within a year after she stopped working for CLPR. The court rejected Le's contention

_____

[7] All undesignated statutory references are to the Code of Civil Procedure.

8

that she could show a continuing violation based on the last act of retaliation (i.e., Garcia Bedolla's failure to name her as a coauthor of the reports) that occurred in the spring of 2015 after her employment ended because the failure to name her as a coauthor of the reports was not an adverse employment action as a matter of law under *Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028 (*Yanowitz*). Further, the trial court determined that even if Garcia Bedolla's conduct in 2015 could be an " 'adverse employment action,' " the Regents would be entitled to summary judgment because Le failed to present evidence of a triable issue of material fact regarding Garcia Bedolla's knowledge of Le's EEOC complaint filed in November 2013.

Le timely appealed.

## II. DISCUSSION

### A. *Standard of Review*

Our standard of review governing summary judgment is well settled. " ' "We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained." ' [Citation.] We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party." (*Yanowitz, supra,* 36 Cal.4th at p. 1037.)

"A defendant moving for summary judgment meets its burden of showing that there is no merit to a cause of action if that party has shown that one or more elements of the cause of action cannot be established or that there is a complete defense to that cause of action." (*Thompson v. City of Monrovia* (2010) 186 Cal.App.4th 860, 864, citing § 437c, subds. (*o*)(2), (p)(2).) "If the defendant does so, the burden shifts back to the plaintiff to show that a triable issue of fact exists as to that cause of action or defense. In doing so,

9

the plaintiff cannot rely on the mere allegations or denial of his or her pleadings, 'but, instead, shall set forth the specific facts showing that a triable issue of material fact exists.' [Citation.] A triable issue of material fact exists 'if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof.' " (*Thompson*, at p. 864.)

Our review is governed by a fundamental principle of appellate procedure, namely, that " '[a] judgment or order of the lower court is *presumed correct*,' " and thus, " 'error must be affirmatively shown.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) Under this principle, the plaintiff bears the burden of establishing error on appeal, even though the defendant had the burden of proving their right to summary judgment before the trial court. (*Arnold v. Dignity Health* (2020) 53 Cal.App.5th 412, 423.) Accordingly, our review is limited to contentions adequately raised and supported in Le's brief. (*Ibid.*)

## B. Summary Judgment Was Appropriate on the Ground that Le's DFEH Complaint Was Untimely

The Regents moved for summary judgment on the ground that it had a complete defense to Le's causes of action because her claims are time barred. The exhaustion of FEHA's administrative remedies is a " 'jurisdictional prerequisite to resort to the courts.' " (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 70.) Accordingly, "[t]he timely filing of an administrative complaint is a prerequisite to the bringing of a civil action for damages under the FEHA." (*Romano v. Rockwell Internat., Inc.* (1996) 14 Cal.4th 479, 492.)

At the time of the alleged misconduct here, FEHA provided that a person claiming to be aggrieved by an alleged unlawful practice must file a verified complaint with the DFEH within one year from the date on which

the alleged unlawful practice occurred.[8] (Gov. Code, § 12960, former subd. (d); *Pollock v. Tri-Modal Distribution Services, Inc.* (2021) 11 Cal.5th 918, 931.)

Le's complaint is primarily centered on conduct by Van Houweling and Lee that occurred before June 30, 2014, when Le's employment with the Regents ended. Le's employment ended well over a year before she filed her DFEH complaint in June 2016. Nonetheless, she contends that her DFEH complaint is timely based on Garcia Bedolla's February 2015 publication of reports that omitted Le as a coauthor, which Le did not learn about until June 30, 2015.

The trial court concluded the Regents was entitled to summary judgment on two grounds: first, the failure to acknowledge Le as a coauthor in the published studies was not an "adverse employment action" as a matter of law, and second, because Le failed to present evidence raising a triable issue of fact that Garcia Bedolla had any knowledge of Le's protected activity—specifically, the filing of the EEOC complaint—at the time of the 2015 publication. We need not address whether the failure to acknowledge Le as a coauthor after her employment had ended can constitute an adverse employment action, because we conclude the trial court properly granted summary judgment based on the absence of a causal link between Le's protected activity and Garcia Bedolla's alleged retaliatory act in refusing to name her as a coauthor.

Government Code section 12940, subdivision (h), makes it unlawful for an employer "to discharge, expel, or otherwise discriminate against any

---

[8] The statute was amended effective January 1, 2020, to provide a three-year statute of limitations. Plaintiff concedes the amendment does not apply to her claims.

person because the person has opposed any practices forbidden under [FEHA] or because the person has filed a complaint, testified, or assisted in any proceeding under [FEHA]." " ' "To establish a prima facie case of retaliation, a plaintiff must show that [he or] she engaged in protected activity, that [he or] she was thereafter subject to adverse employment action by [his or] her employer, and there was a causal link between the two." ' " (*Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 52, 69 (*Morgan*); *Yanowitz, supra,* 36 Cal.4th at p. 1042.) The requisite causal link may be established by an inference drawn from circumstantial evidence, " ' " 'such as the employer's knowledge that the [employee] engaged in protected activities and the proximity in time between the protected action and allegedly retaliatory employment decision.' " ' " (*Morgan,* at p. 69.) " 'Essential to a causal link is evidence that the employer was aware that the plaintiff had engaged in the protected activity.' " (*Id.* at p. 70.)

Relying on *Morgan*, the trial court here determined that Le failed to present evidence showing a triable issue of fact regarding Garcia Bedolla's knowledge of *Le's EEOC complaint* in November 2013. The trial court observed that the Regents presented unequivocal evidence that Garcia Bedolla did not learn that Le had filed her EEOC complaint until 2016, and Le's circumstantial evidence that Garcia Bedolla "was no longer friendly to her in professional or personal contexts" after Le filed her EEOC complaint was insufficient to show a triable issue of fact as to Garcia Bedolla's knowledge of protected activity.

On appeal, Le does not challenge the determination that she failed to present a triable issue of material fact as to Garcia Bedolla's knowledge of her November 2013 EEOC complaint or distinguish *Morgan*, but contends summary judgment was improper because the undisputed evidence shows

12

Garcia Bedolla was aware Le had engaged in protected activity based on their July 2013 conversation in which Le revealed she was being stalked and harassed by a faculty member and Garcia Bedolla told her not to " 'take on' " the Regents.

As an initial matter, we note this was not the theory Le relied on in the trial court when opposing the summary judgment motion.[9] In her supplemental opposition brief below, Le mentioned cursorily her complaint to Garcia Bedolla in July 2013 about the harassment and stalking, but acknowledged that Garcia Bedolla hired her after that conversation. Rather, Le's opposition focused on evidence that Le engaged in "further protected activity" in November 2013, when she filed the EEOC complaint and that Garcia Bedolla's behavior toward her changed only after she filed the EEOC complaint. Indeed, Le specifically asserted that Garcia Bedolla "treated [her] well" up until the filing of the EEOC complaint. We observe a party is generally precluded from arguing issues not raised in the trial court. More specifically, on appeal from a summary judgment for a defendant, a plaintiff may not assert for the first time on appeal a new theory under which the evidence might support the plaintiff's case. (*Magallenes de Valle v. Doctors Medical Center of Modesto* (2022) 80 Cal.App.5th 914, 924; *San Francisco Print Media Co. v. The Hearst Corp.* (2020) 44 Cal.App.5th 952, 965.) Because the Regents does not contend Le forfeited this argument however, we will address it on the merits.

As noted above, Le asserts that the trial court erred in granting summary judgment because even if Garcia Bedolla did not know about the

---

[9] Accordingly, Le's argument that the trial court's focus on Garcia Bedolla's lack of knowledge of the EEOC complaint was "myopic" and ignored evidence that she complained to Garcia Bedolla in July 2013 is not well taken.

EEOC complaint, she had direct knowledge of Le's protected activity based on Le's July 2013 conversation about the harassment and stalking. Even assuming that the July 2013 conversation qualifies as protected activity, however, there is no causal link between that conversation and the alleged act of retaliation. (See, e.g., *Clark County School Dist. v. Breeden* (2001) 532 U.S. 268, 272–274 (*Breeden*) [evidence employer had planned to transfer employee *before* learning she filed a lawsuit was "no evidence whatever of causality" and even if employer was aware, 20-month gap between protected activity and transfer nullified inference of a causal connection]; *Cornwell v. Electra Cent. Credit Union* (9th Cir. 2006) 439 F.3d 1018, 1036 (*Cornwell*) [trial court did not err in finding seven-month gap between Le's complaint and termination too much time for reasonable jury to conclude Le was terminated because of the complaint]; Chin, et al., Cal. Practice Guide: Employment Litigation (The Rutter Group 2022) ¶ 5:1624 [inference of retaliatory intent may be dispelled by evidence showing lack of connection between protected conduct and alleged retaliation].)

First, the alleged retaliatory act of failing to name Le as a coauthor of the reports occurred in February 2015, more than a year and half after the July 2013 conversation. (See *Morgan, supra,* 88 Cal.App.4th at p. 69 [retaliatory motive is proved by showing the adverse action follows within a " ' "relatively short time" ' " after protected activity]; *Breeden, supra,* 532 U.S. at pp. 273–274 [20-month gap between protected activity and alleged retaliation too long to establish causation]; *Cornwell, supra,* 439 F.3d at p. 1036 [seven months too long].) Second, shortly after their July 2013 conversation, Garcia Bedolla hired Le to provide research assistance on her project. Le herself presented evidence that she "had a very good relationship" with Garcia Bedolla up until November 29, 2013, and it was not until

14

December 2013 that Le asserts Garcia Bedolla's behavior toward her began to change. Le does not explain why Garcia Bedolla would hire her shortly after the July 2013 conversation and treat her very well, but many months later stop being friendly and begin scrutinizing her work based on her earlier revelation of protected activity.[10] (See *Manatt v. Bank of America, NA* (9th Cir. 2003) 339 F.3d 792, 802 [employer's decision to give plaintiff a pay raise and selection for prestigious assignment between time of complaint and alleged adverse action defeated any causal link necessary for retaliation claim, as did fact that there was nine-month gap between her complaint and alleged adverse action].)

We also reject Le's suggestion that the trial court improperly considered whether Garcia Bedolla had knowledge of Le's protected activity even though the Regents did not raise it in its initial moving papers. The trial court requested supplemental briefing on causation in January 2020, and the parties had over 10 months to conduct discovery and prepare their supplemental briefing. Le has not shown she was denied due process.[11] (Cf. *San Diego Watercrafts, Inc. v. Wells Fargo Bank* (2002) 102 Cal.App.4th 308, 316 ["due process requires a party be fully advised of the issues to be

---

[10] *Green v. Laibco, LLC* (2011) 192 Cal.App.4th 441, 455–456 and *Wysinger v. Automobile Club of Southern California* (2007) 157 Cal.App.4th 413, 421, cited by Le in her reply brief, are distinguishable. In both cases, appellate courts concluded sufficient evidence supported jury verdicts in favor of the plaintiffs given the pattern of conduct consistent with retaliatory intent following protected conduct. (*Green,* at p. 456 ["various sorts of retaliatory conduct began immediately after her complaint and persisted until her employment ended"]; *Wysinger,* at p. 421 [employee may show causal connection between protected activity and adverse employment action if there is a pattern consistent with retaliatory intent].)

[11] We observe Le specifically disavows that the trial court was biased against her.

15

addressed and be given adequate notice of what facts it must rebut in order to prevail"].)  Moreover, Le did not object to the procedure in the trial court, and accordingly, has forfeited any objection on appeal.  (See *Sperber v. Robinson* (1994) 26 Cal.App.4th 736, 742–743.)

In sum, the trial court properly granted summary judgment in favor of the Regents because Le failed to present evidence of a triable issue of material fact regarding a causal link between her protected activity and Garcia Bedolla's alleged retaliatory act.  Because we conclude the trial court appropriately granted summary judgment on this ground, we need not reach the Regents' alternative arguments that postemployment actions cannot constitute an "adverse employment action" as a matter of law under California law, or that Le's claim was untimely because FEHA requires that timeliness be measured from the publication date of the reports, not when Le learned about them.

## C.  Denial of Continuance

We next consider Le's contention that the trial court abused its discretion by denying or failing to expressly rule on her request for a continuance of the summary judgment hearing to obtain further discovery.

Section 437c, subdivision (h) allows for continuance of a motion for summary judgment hearing if it appears from affidavits in opposition to the motion that "facts essential to justify opposition may exist but cannot, for reasons stated, be presented."  The affidavits "must show: '(1) the facts to be obtained are essential to opposing the motion; (2) there is reason to believe such facts may exist; and (3) the reasons why additional time is needed to obtain these facts.' "  (*Cooksey v. Alexakis* (2004) 123 Cal.App.4th 246, 254.)  Continuance requests under section 437c, subdivision (h) are to be liberally granted, and are "virtually mandated ' "upon a good faith showing by

16

affidavit that a continuance is needed to obtain facts essential to justify opposition to the motion." ' " (*Bahl v. Bank of America* (2001) 89 Cal.App.4th 389, 395.)  A continuance is not mandated, however, when the submitted affidavit fails to make the necessary showing.  (*Cooksey*, at p. 254.)

As an initial matter, we reject Le's apparent argument that reversal is warranted because the trial court failed to mention or expressly rule on the request for continuance in its order.  A grant of summary judgment implies denial of a continuance request, and we may presume the denial was based on the reasons raised in opposition.  (*Frazee v. Seely* (2002) 95 Cal.App.4th 627, 634.)

On this record, the trial court's implicit denial of the request was not an abuse of discretion because the affidavit submitted by Le's counsel failed to demonstrate the likelihood that facts essential to oppose the motion existed. Le's counsel's affidavit in support of the request for a continuance asserted generally that the Regents' discovery responses were inadequate, that no metadata or privilege log was ever produced, and asserted that it was likely there were withheld records directly relevant to Garcia Bedolla's knowledge of Le's EEOC complaint and her retaliation related to that knowledge. Counsel stated:  "For example, by refusing to turn over numerous emails by and between the key witnesses in this case, including Dr. Garcia Bedolla and Dr. Lee, [the Regents] withheld key information regarding their knowledge of [Le]'s protected activity and their reactions to the same.  Furthermore, without metadata, it's impossible for [Le] to establish whether any of the electronic records have been tampered with.  Without a privilege log, [Le] is unable to establish whether records were improperly withheld."

Le offers no support for her counsel's bare assertion that the Regents refused to turn over documents between key witnesses.  In late August 2020,

17

the Regents produced 635 pages of documents responsive to Le's discovery requests.  Le's counsel's affidavit did not cite any particular discovery request for which documents were not produced, and the trial court was entitled to accept the declaration from the Regents' counsel it was not withholding documents.  Nor is there any reason for the court to assume that documents were withheld because neither metadata nor a privilege log were produced. Le points to no evidence in the record suggesting the Regents tampered with its electronic records or withheld responsive documents relevant to Garcia Bedolla's knowledge on the basis of a privilege claim.  (See § 2031.240, subd. (c)(1) [requiring a privilege log only if an objection is based on a claim of privilege].)  On this record, the trial court's implicit denial of a continuance was not an abuse of discretion.[12]

### D. *Motion to Strike Portions of Le's Reply Brief*

We deferred consideration of the Regents' motion to strike portions of Le's reply brief until our decision on the merits.  The Regents sought to strike portions of Le's reply brief arguing that the Regents' statement to Le in December 2015 that records of complaints she sought did not exist was an alleged adverse employment action rendering her DFEH complaint timely.

We have considered both the Regents' motion to strike and Le's opposition, and conclude the motion to strike is meritorious.

An appellant may serve an optional reply brief.  (Cal. Rules of Court, rule 8.200(a)(3).)  However, the general rule is that " ' "points raised in the reply brief for the first time will not be considered, unless good reason is

---

[12] In addition, as the Regents asserts, in September 2020, Le's counsel agreed to the continue the motion to compel hearing to be heard *after* the hearing on the motion for summary judgment, suggesting that even Le's own counsel did not consider further responses or production of documents essential to oppose summary judgment.

18

shown for failure to present them before." ' " (*Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.* (2000) 78 Cal.App.4th 847, 894–895, fn. 10.) As the California Supreme Court has explained, "Obvious reasons of fairness militate against consideration of an issue raised initially in the reply brief of an appellant." (*Varjabedian v. City of Madera* (1977) 20 Cal.3d 285, 295, fn. 11; *In re Groundwater Cases* (2007) 154 Cal.App.4th 659, 693.)  Matters that are raised by an appellant for the first time in the reply brief are subject to a motion to strike.

Le did not raise this issue in her opening brief, nor does she offer any reason it could not have been raised.  Accordingly, the Regents' motion to strike is granted, and we will not consider the argument that was not raised in Le's opening brief on appeal.

### III.  DISPOSITION

The judgment is affirmed.  The Regents is entitled to costs on appeal.

19

MARGULIES, J.

WE CONCUR:


HUMES, P. J.


BANKE, J.


A162114
*Le v. The Regents of the University of California*

20